## Nichols *v.* Bronson.                 1805.

In the Court below,

SEBA BRONSON, jun. *Plaintiff*; JOHN NICHOLS, *Defendant.*

THIS was an action for a vexatious suit, brought upon the statute, (*a*) demanding treble damages.

The declaration stated, that *Bronson* had sold his property in Waterbury, and bought a farm in New-Connecticut, whither he was about to remove with his family. *Nichols* knowing this, attached him, as he was setting out, in an action of book-debt, returnable before a justice, three months afterwards; in consequence of which, he was subjected to great expense in defending, &c.

The general issue was pleaded; and a verdict found for the plaintiff.

The defendant moved in arrest of judgment, alleging, that while the jury had the case under consideration, one of the jurors conversed with other people relative to the case, and said, in their hearing, that the jury had agreed on a verdict, and were ready to return it into court. The Court found this allegation to be true, but held it insufficient.

The defendant, also, filed a bill of exceptions, from which it appears, that while the case was on trial, the plaintiff offered in evidence a deed, by which he had conveyed away his property in Waterbury; the defendant objected to its admission; but the Court over-ruled the objection, and admitted it.

It is not a sufficient ground for setting aside a verdict, that while the jury had the case under consideration, one of them said in the hearing of other people, that the jury had agreed, and were ready to return their verdict into court.

In an action for a vexatious suit, the plaintiff may shew, as grounds of special damage, his peculiar situation and circumstances, at the time such suit was brought.

(*a*) *Stat.* 429. *edit.* 1796.

1805.        *Ingersoll*, and *Staples*, for the plaintiff in error.

NICHOLS
*v.*
BRONSON.

Two grounds of error appear upon this record ; one from the motion in arrest ; the other from the declaration and bill of exceptions.

1. The ground of error in the motion in arrest arises from the misbehaviour of a juror, while the cause was on trial, to wit, after the jury had retired from the bar, and before they had delivered up their verdict in court. One of the jury said they had agreed, and should probably deliver up their verdict in the morning, at the opening of the court.

The law selects jurors with care ;—they must be good, and lawful freeholders, and native citizens ;—men of good morals, and respectable in point of property. As between the parties, they must be wholly impartial, and free from all prejudice from interest, or other causes. During the trial, jurors are under the eye of the court, or an officer of the court, and are strictly watched. They are, also, sworn. Upon a strict observance of all these rules relative to jurors depends the purity of the administration of justice.

In Connecticut, jurors, after a cause is committed to them, are not confined as in England ; but mix at pleasure with the people surrounding the court. (*b*) We, therefore, depend entirely on the strict and literal observance of the juror's oath for the purity of our trials. The court ought not, therefore, to permit them to relax from a rigid observance of this oath.

If jurors may converse at all with by-standers relative to the cause, there is no spot at which you can draw the line. The only safe rule is, to enforce a strict observance of the

(*b*) Such may have been the practice ; but it is as much in contravention of our statute, as of the common law. *See stat.* 28. *edit.* 1796. *R.*

oath. If this is not to be the rule, the question is entirely changed.—It is no longer a question, whether a juror may, or may not, talk relative to the cause on trial; but what he may, and what he may not, say relative to the cause. One judge decides, that merely to say, that the jurors had agreed, or were likely soon to agree, is no violation of the duties of a juror. Another goes a little further, and a third further still; and in this way, all restriction is taken away, and jurors mix with the populace, and converse as they please; and the trial by jury becomes a system of popular intrigue, the more dangerous, because the responsibility is divided among so many.

We might here shew how easily an artful juror might, in using the words set forth on this record, convey every thing he wished, by the very manner of speaking. To keep the course of justice steady, it is necessary to be governed by plain, palpable rules, such as every person may at once perceive. The rule prescribed, by the juror's oath, is now of this character; but if this conversation is to be sanctioned, it is easy to see, that the rule is to be changed to one exceedingly loose and indefinite; to one that will have its very existence in the variable, and ever varying opinion of each individual judge.

2. The second ground, on which we claim a reversal, is contained in the declaration, and bill of exceptions. After saying, that we commenced the suit in question maliciously, the plaintiff states, as grounds of damage, that he had sold his land in Waterbury; bought in New-Connecticut; was prevented from labouring upon his new farm; from removing his family as soon as intended; and obliged to travel from New-Connecticut here to attend this cause.

We contend, that these causes of damage are too remote: By stating them in the declaration thus particularly, they are not the less so. A party may have a good cause of enhancing damages, and by omitting to state it particularly, lose the

1805.

NICHOLS
v.
BRONSON.

benefit of it. But by stating a cause to enhance damages, it does not, of course, become a legal cause. The *nature* of these causes of special damages is not at all affected by being thus particularly charged in the declaration. *In jure, non remota causa, sed proxima, spectatur.* (c) This is a general rule, and applies in no cases more frequently, and forcibly, than in questions of damages, and consequential injuries. In the cases of insurance, we also find good illustrations of the rule. What damages are to be paid for, by the under-writers, being the consequence of accidents insured against, see the cases of *Robertson* v. *Ewer*, (d) and *Eden* v. *Poole*. (e)

With these illustrations of the rule laid down by Lord BACON, it is pretty easy to determine, whether this New-Connecticut story ought to be charged and proved to enhance damages. Suppose *Bronson* had fallen sick on the way ; might not that as well be charged and proved to enhance damages ? Suppose in consequence of his absence, his cattle had died ; his crops had been destroyed ; or his house burnt ; upon the principle contended for by the defendant in error, all must be well paid for, by *John Nichols ;*—for all these misfortunes might be traced to him.

*Smith*, (of New-Haven,) and *Bronson*, for the defendant in error.

1. The first ground of error assigned, is, that the verdict ought to have been set aside, because one of the jury, while the cause was under consideration, said in the hearing of sundry persons not of the jury, that the jury were agreed, and ready to return into court.

That part of the juror's oath, of which, it is contended, the above is a violation, is in these words—" and when you

(c) See *Bacon's Maxims* for the rule, and its illustration.
(d) 1 *Term Rep.* 132.
(e) *Park on Ins.* 57.

" are agreed of any verdict, you shall keep it secret, until you deliver it up in court."—The only question, which can attend the construction of the words quoted, is, whether the agreement of the jury, or the verdict, or both, are intended to be kept secret.—That both are not intended, appears by the words, " you shall keep it secret," pointing out the singular number. If one only is intended, there can be little doubt which that is, as the word " *it*" clearly refers to *verdict*, the only substantive to which it can refer. The obvious import of the words quoted is, that the jurors are not to inform persons not of the jury, what their verdict is, whether for the plaintiff or defendant, general or special, the amount of damages, &c.

Suppose, however, that we are incorrect in the construction of the juror's oath, and allow, that one of the jury have been guilty of a violation of his oath ; still it is not pretended, that his ill conduct had any influence on the case ; and, indeed, it is impossible to conceive how it could have had any effect upon the decision of the question between the parties. In such a case, it appears hard to turn the party round for the misconduct of one of the jury, by which the merits of the question have not been, and could not be, affected. No decisions can be found, either of the English courts, or of our own, which have gone the lengths contended for, by the counsel for the plaintiff in error. Our courts have been very liberal in setting aside verdicts, for the misconduct of jurors ; so much so, that it is to be wished those cases may not be extended. But whenever our courts have set aside verdicts, for jurors' misconduct, it has happened where the misconduct had an immediate effect upon the decision of the case ; or its natural and probable consequence was an improper influence upon their decision ; as where the jury have submitted the decision to chance, or have talked with persons not of the jury relative to *the merits* of the cause under consideration. To set aside the verdict, in this case, would be to punish the innocent instead of the guilty, without the least necessity. The proper

mode would be, to fine the faulty juror, which would put an effectual stop to jurors' talking improperly. The practice contended for by us, is agreeable to the English law on the subject; as where the jury eat, at their own expense, or part of the jury leave their companions, and return into court, and are ordered back. (*f*)

2. The second ground of error, pointed out, is, that the Superior Court ought not to have admitted the deed, mentioned in the bill of exceptions, to shew, that *Bronson* had sold his property in Waterbury.

It was proper to admit the deed, to shew the *malice* of *Nichols.*—To bring an action, although there should be no ground for it, may not be malicious. But to bring a groundless action, as in this case, with such circumstances attending it as those stated in the declaration, and the whole known to the party bringing the action, can be accounted for only on the score of malice.

Further, it was proper to admit the deed, to prove *special damage.* But it is said, that the Superior Court erred in admitting any special damage to be proved.

In the first place, it does not appear, by the bill of exceptions, what special damage was proved. If, therefore, we can make it appear, that it was proper to prove special damage of any kind, it will be sufficient. It is admitted, that the special damage proved, is stated in the declaration; the defendant in error was not, therefore, in any danger of surprise. The ground taken by his counsel, that the damage stated is too remote, is inapplicable to the case before the Court;—although we apprehend, that the damage being too remote, can never be urged, except in cases of contract. In contracts, you may not prove remote consequential damage, because it is not supposed to be in the con-

(*f*) 12 *Mod.* 111, *Rex.* v. *Burdett. Bul. Ni. Pri.* 308.

templation of the parties, at the time of making the contract; it being a rule, that contracts shall not be carried beyond the intention of the contracting parties. In cases of torts, the rule is different; there, if special damage is stated, it may be proved, as in slander, trespass, &c. But we are under no necessity of taking this ground; nothing appears by this declaration, and bill of exceptions, to have been given in evidence, but what was the *direct* consequence of the vexatious suit. And it does not seem to be contended, but that necessary expenses, in defending against the suit, may be proved. Expenses of this sort are admitted to be proved in England. (*g*)

In this case, it was peculiarly proper to prove special damage, the action being grounded upon the statute, which gives treble damage. The statute, when it speaks of treble damage, must mean the real, and not the presumptive damage of the injured party. Unless we had been permitted to prove our damage, it would have been impossible for the jury to form any judgment, except at random.

BY THE COURT, unanimously,

The judgment was affirmed.

(*g*) 4 *Burr.* 191, *Farmer* v. *Darling.*

E e

1805.

NICHOLS
*v.*
BRONSON.