## DENISON *against* HYDE and another.

A former decree of a district court of the *United States* in another state, in which the title now in controversy was directly decided between the same parties, is conclusive evidence of such title, as established by such decree.

And if the nature of the title, and the manner in which it was acquired, were in issue, the decree is conclusive upon those points.

Therefore, where the plaintiff in a libel alleged a title to a vessel, by virtue of certain conveyances in *January* and *February,* which the defendant denied ; and the decree found a title in the plaintiff, at the time of filing the libel in *August,* by virtue of those conveyances ; it was held, in a subsequent suit between the same parties, that such decree was conclusive evidence of title in the plaintiff, at an intermediate point of time.

It is no objection to the conclusive effect of such a decree, that it does not appear from the proceedings of the court, that any monition or citation issued to the defendant, provided he voluntarily appeared, and submitted to the jurisdiction of the court, and was heard, with his proofs, upon the point decided.

So where *A.,* one of two partners, defendants in in the suit, appeared, and signed a claim and answer for himself and his partner *B.,* and after a hearing, costs were decreed against both ; it was held to be no objection to the conclusive effect of the decree, that the record shews no appearance, in person or by proctor, on the part of *B.,* as it will be presumed, that the authority of *A.* to appear for him, was proved to the satisfaction of the court.

Though the courts of this state, from comity to the tribunals of a sister state, will give effect to their decisions, when authorized by the established principles of law ; yet this comity will not induce our courts to sanction a judgment irregularly obtained.

Therefore, a judgment obtained in another state, against a person who had no legal notice to appear, and who did not in fact appear, will be regarded here as of no validity.

No judgment can affect others than parties or privies to it.

The plaintiff having established his title, by the decree of a district court of the *United States*, passed on the 3rd of *November*; it was held, that the judgment of a state court. rendered on a subsequent day, though bearing on the question of title, was of no avail to counteract the plaintiff's evidence.

Where the plaintiff's vessel was seized, by the defendants, on the 4th of *March*, and sold on the 30th, by order of the court, on a process to which the plaintiff was not a party; it was held that the tort was then complete, and a right of action in the plaintiff existed, which was not affected, by a subsequent claim made by him, and his appearance, in court, to obtain a restoration of the property.

The judgment of a court in another state, by which property was taken, without causing the owner to be made party to the suit, cannot be supported, on the presumption, that the court exercised its jurisdiction discreetly; for such laws cannot be presumed without proof; and if proved, yet being opposed to common right, our courts would not give them effect.

Where it appeared, in an action of trespass for the seizure and detention of the plaintiff's vessel that the plaintiff, afterwards, but some time before the date of his writ, purchased her under a decree of court, it was held, that damages might be given for the detention, after she was so in the plaintiff's possession, down to the date of the writ, as she was restored only by the substitution of the plaintiff's money for her value as sold.

In actions of trespass for injuries to property, the law furnishes no precise rule of damages; but the jury are to judge, under all the circumstances attending the transaction, to what damages the plaintiff is entitled.

It was, therefore, held, in an action of trespass for the seizure and detention of the plaintiff's vessel, that the jury were at liberty to presume the damage and expense, which might occur in the recovery of the property, and for the forcible invasion of it, as well as for the injury the vessel had sustained, by the trespass alleged, and to give damages accordingly.

This was an action of trespass *vi et armis,* against *Theophilus R. Hyde* and *Jedediah Leeds,* who were copartners in business at *New-Orleans,* under the firm of *Hyde & Leeds.* The declaration contained two counts. The first count was general, alleging a forcible taking out of the plaintiff's possession, and the detention, on the 4th of *March,* 1824, of the plaintiff's sloop *Eliza-Ann,* at *New-Orleans,* in the state of *Louisiana,* together with her tackle and apparel. The second count, after alleging a trespass, in the general manner mentioned, further alleged, that the defendant procured the sloop to be sent to *New-York* and other places, and caused great expense to the plaintiff in relation to the officers and crew of the sloop, and deprived the plaintiff of her use and earnings. The writ was dated the 8th of *October,* 1824.

The cause was tried, on the general issue, at *Norwich, January* term, 1827, before *Daggett,* J.

The taking of the sloop at *New-Orleans,* by the defendants,

was not denied. The plaintiff offered no evidence of his title, except a decree of the district court of the *United States*, for the *Southern* district of *New-York*; although it was admitted, that when the defendant took her, she was in the possession of one *Peter Rowland*, as master thereof, appointed by the plaintiff, and one *David Leeds*, who were the sole owners of her, when she sailed on her voyage from *New-York*, some months before, for *New-Orleans*; and that before she was taken by the defendants, as alleged in the declaration, they, with *Peter Rowland*, were notified, that *David Leeds'* interest in her had been transferred to the plaintiff, so that he was then the sole owner thereof.

The decree was founded on a libel, filed by the plaintiff, on the 7th of *August*, 1824, addressed to said district court; and, among other allegations, it expressly alleged, that until the 14th of *January*, 1824, the libellant and *David Leeds* were the sole owners of the sloop; and that, on that day, *David Leeds*, by a bill of sale, duly executed and delivered, conveyed to the libellant and one *George Haley*, upon a valuable consideration, all his interest in her; and that, on the 20th of *February*, 1824, *George Haley* conveyed all his interest in her to the libellant, so that he then became sole owner of her. The libel stated various matters as grounds of interference, unnecessary here to be noticed, because none of them are the subject of complaint; and prayed, that the defendants *Theophilus R. Hyde* and *Jedediah Leeds*, together with *Peter Rowland* and *Phinehas Stanton*, all of whom were charged in the libel with being, by force and fraud, in possession of the sloop, within the jurisdiction of the court, and combining fraudulently to send her on a voyage, and prevent the libellant from gaining possession of her, might be cited in, generally and specially, to appear and answer to the premises, and abide the decree of the court in the premises.— To this libel *Phinehas Stanton* and *Jedediah Leeds*, for himself and the other defendant, *Theophilus R. Hyde*, filed their claim and answer, alleging many things not necessary here to be noticed, but in relation to the title of the plaintiff derived from *David Leeds* and *Haley*, as before stated, asserting, that they had no other knowledge of it, than what was alleged in the libel, and leaving the libellant to prove it as he could; averring further, that if the conveyances were made, they believed them to be fraudulent; and they therefore insisted upon strict proof

of all the matters in the libel alleged in relation thereto.    The
claim and answer was signed as follows:

<div style="margin-left: 2em;">

" *John Anthon,* Proctor and Advocate
for respondents and claimants.

*Phinehas Stanton.*

*Jedediah Leeds,* for himself and *Theo-
philus R. Hyde.*"

</div>

*New-London,*
July,
1827.

Denison
*v.*
Hyde.

The sloop had been previously sold, by consent of parties,
and by order of the court; and the plaintiff had purchased her,
and paid the money into the branch bank of the *United States,*
subject to the order of the court, to await the final decree.

On the 3rd of *November,* 1824, the district court pronoun-
ced its final decree, and found directly, in its decree, that by
virtue of the conveyance by *David Leeds* to *George Haley*
and the plaintiff, and the conveyance by *George Haley* to the
libellant, mentioned in the libel, the libellant was, at the time
of filing the libel, the only owner and lawful proprietor of the
sloop *Eliza-Ann.*    It was further decreed, that the libellant
should recover of *Phinehas Stanton, Theophilus R. Hyde* and
*Jedediah Leeds,* his costs.

The defendants, in justification of the taking of the sloop at
*New-Orleans,* offered and read in evidence a record of a judg-
ment of the district court of the state of *Louisiana,* by which
they seized, sold and disposed of the sloop, in satisfaction of a
debt in their favour against *David Leeds,* who was owner of two
thirds of the sloop.    It appeared, that on the 4th of *March,*
1824, the defendants applied, by petition, to said district court,
alleging, that *David Leeds,* resident out of *Louisiana, viz.* in
*Connecticut,* was justly indebted to them in the sum of about
1000 dollars; that the *Eliza-Ann,* the sloop in question, was
the property of *Leeds,* and was then within the jurisdiction of
the court; praying an attachment against the sloop, and that
she might be seized and sold to satisfy the claim, and that judg-
ment might be rendered in their favour for the amount due and
costs.    The defendants accompanied the petition with an affi-
davit of the debt, and a bond to secure *David Leeds* against all
damages accruing to him by their proceeding.    The district
court then issued an order to the sheriff to seize all the proper-
ty of *David Leeds* to be found within the parish of *New-Or-
leans,* and to give notice thereof, by leaving a copy thereof in
*French* and *English* at *David Leeds'* last place of abode, and
also causing a copy thereof to be posted on the door of the

parish church in *New-Orleans,* and to make return of his doings to the court, on the second *Monday* of *May* then next.— The sheriff returned, that on the 4th of *March,* 1824, by virtue of the above order, he took two thirds of the sloop, gave notice to the captain, and also posted notice on the door of the parish church, and that on the 30th of said *March,* he sold, at the coffee-house, the sloop, tackle, &c. in pursuance of an order of the court issued on the 17th of *March;* that *Phinehas Staunton* became the purchaser for 300 dollars; and that the defendants gave their bond to abide the judgment of the court. This return was dated the 1st of *May,* 1824. It further appeared, that on the 9th of *March,* D. *Augustin,* Esq. was appointed, by the court, to defend the estate of *Leeds;* and that he was allowed ninety days to correspond with him, and file an answer. On the 16th of *March,* a letter was filed in court from *Peter Rowland,* the master, appointing D. *Augustin,* Esq. attorney for *David Leeds,* and wishing the sloop sold; and on the 17th, the court issued an order of sale, and directed, that the avails be held by the sheriff. On the 8th of *June* following, a claim to the sloop was filed in court, by *P. J. Smith,* Esq. of counsel for *Peleg Denison,* the plaintiff, praying that the order of sale might be annulled, and the sloop restored to him, as *Leeds* had no interest or property in her. On the 27th of *November,* D. *Augustin,* appointed by court attorney to *David Leeds,* appeared in court, and denied all the facts stated in the petition of the defendants. On the 14th of *December,* testimony was heard, by the court, on the petition of the defendants against *David Leeds;* and judgment was rendered in their favour for the amount of their debt, and that the proceeds of the sale of the sloop should be applied in part satisfaction of it.

The judge charged the jury, that the process, record and judgment of the district court of *Louisiana,* must be laid out of the case, and holden for nothing: That the process, record and judgment of the district court of the district of *New-York,* was conclusive evidence of the plaintiff's title to the property, at the time of the seizure, and of the taking by the defendants, in *Louisiana,* and dispensed with the necessity of any other proof of title: That the plaintiff was entitled to recover damages for the detention of the vessel down to the time of the date of the plaintiff's writ, notwithstanding the restoration of the vessel to the plaintiff, and the sale thereof, by order of the

district court in *New-York* : That the jury were at liberty to
presume the damage and expense, which might accrue in the
recovery of the property, and for the forcible invasion of it, as
well as for the injury the vessel had sustained by the trespass
alleged, and to give damages accordingly.

The jury found a verdict for the plaintiff, with 1200 dollars damages ; and the defendant moved for a new trial for a misdirection.

*Cleaveland* and *H. Strong,* in support of the motion, contended, 1. That the judge was wrong in directing the jury, that the record of the *New-York* district court, was *conclusive* evidence of the plaintiff's title. First, if this was a libel in admiralty, on the instance side of the court, it was necessary to have a citation or monition. There cannot be *reus,* without his being called upon to appear. His coming in voluntarily, would not make the process good. *Hall's Praxis,* 5. Secondly, there was no appearance on the part of *Hyde.* He did not in fact appear ; and *Leeds* had no authority, as partner, to appear for him. His signing the answer "for himself and *Theophilus R. Hyde,*" could bind himself alone. Thirdly, had this been a suit at common law, the judgment, having been obtained in a different state from that to which the defendants belonged, against a person who had no legal notice to appear, and who did not in fact appear, would be of no validity. *Aldrich* v. *Kinney,* 4 *Conn. Rep.* 380. Fourthly, if the proceedings were regular, no fact is found, which authorized the direction of the judge as to the effect of this record. The decree finds, that " the libellant was, at the time of filing the libel, the only owner and lawful proprietor of the *Eliza-Ann.*" This is no evidence of the fact, that he was owner on the 4th of *March* before.

2. That the charge in relation to the record of the district court of *Louisiana,* was incorrect. That judgment was of precisely the same nature as the judgment in *New-York ;* both being founded on ecclesiastical or civil law process. *Hall's Praxis,* 35. That the court in question had right to proceed in the way it did, we are bound to presume, on the principle, that *omnia præsumuntur rite et solenniter esse acta.* 3 *Stark. Ev.* 1250. By the constitution of the *United States, art.* 4. *sect.* 1. the decree is to have the same effect here, as it would have in *Louisiana.* The plaintiff having voluntarily made himself a party to the proceeding, is bound by it as a party. *Hall's Praxis* 77, 8.

He has submitted to the jurisdiction.   He asked for the decision of the court, and it was had, upon a claim of title filed by him.

But it will be said, that the *New-York* court has set this judgment aside.   In the first place, one court has no right collaterally to enquire into and overhale the judgment of another.   1 *Stark. Ev.* 208. *sect.* 67.   Secondly, as the vessel was sold under an order of the court of *Louisiana*, the title of the purchaser under such sale was good.   *Bissell* v. *Briggs*, 9 *Mass. Rep.* 462.

3. That the charge was wrong as to the allowance of damages for detention of the vessel after her restoration.

4. That the charge was also wrong as to the allowance of damages for the expenses of recovering the vessel.   First, no such damages were stated in the declaration, and for that reason, were not recoverable.   1 *Chitt. Plead.* 333. 386, 7.   Secondly, no damages can be *presumed*, except such as naturally and necessarily result from the acts stated and proved.   *De Forest* v. *Leete*, 16 *Johns. Rep.* 122.   *Lindon* v. *Hooper, Cowp.* 418.   The jury cannot presume what the party would not be permitted to prove.

*Goddard* and *Billings*, contra, contended, 1. That the record of the district court of *New-York*, was conclusive evidence of title in the plaintiff.   First, upon principles applicable to suits at common law.   The title of the plaintiff was put in issue in that suit, being specially set forth in the libel; and was directly adjudicated upon.   The judgment, therefore, upon this point, is conclusive, in another suit, between the same parties, to establish the same point.   1 *Stark. Ev.* 182. & seq. 205.   Secondly, upon principles applicable to admiralty decisions.   These decisions, being of an exclusive jurisdiction, operating *in rem*, are conclusive evidence upon the matters which they decide, when the same points arise incidentally in other courts.   1 *Stark. Ev.* 238.   Thirdly, the decree establishes the title of the plaintiff to the sloop, by virtue of the conveyances of the 14th of *January* and the 20th of *February*.   Consequently, he must have had title on the 4th of *March*.   Fourthly, a new trial will not be granted because the decree of the *New-York* court does not find a title in the plaintiff on the 4th of *March*.   It is sufficient, that it establishes a title in him on the 7th of *August*.— The plaintiff was not bound to prove a trespass on the 4th of

*March* ; the day being immaterial.  *Non constat* that the tres-
pass was not committed on the 7th of *August.*  The finding of
the jury establishes the point, that the act complained of was
done while the plaintiff had title.  Further; the objection as
to the *time* of the plaintiff's title, was not made at the trial.
That question, therefore, is not properly before this Court for
revision.

2. That the judgment of the court at *New-Orleans* was not
a bar to the plaintiff's demand.   First, there was no service on,
or notice to, *David Leeds ;* nor was there any appearance by
him, or by any one authorized by him to appear.   *Buchanan* v.
*Rucker,* 9 *East,* 192.  *Kibbe* v. *Kibbe, Kir.* 119.  *Smith* v.
*Rhoades,* 1 *Day* 168.  *Aldrich* v. *Kinney,* 4 *Conn. Rep.* 380.
There is no difference between *enforcing* a judgment so obtain-
ed, and *establishing a title* by it.   Secondly, the *New-Orleans*
court is an *inferior* court, and not of *concurrent jurisdiction*
with the superior court of this state.   Its proceedings are gov-
erned, not by the rules of the common law, but by the civil law.
Thirdly, the proceedings in the *New-Orleans* court were inval-
idated, by the decree of the district court of *New-York;* the
validity of those proceedings having been submitted, by the de-
fendants, to the latter court, and made the subject of adjudica-
tion.

3. That the charge in relation to the damages, was correct.
The plaintiff was, *prima facie,* entitled to recover for the *val-
ue* of the vessel.   It was incumbent on the defendants to re-
duce the damages, if they claimed a reduction.   First, the al-
leged *restoration,* relied upon for the purpose, could not have
the effect to preclude the jury from giving damages for deten-
tion down to the date of the writ.   Strictly speaking, the vessel
was not *restored* to the plaintiff, but was *sold* to him.   He paid
the money for her, and more than any one else would give.   It
was as injurious to him to be out of his money as of his vessel.
Secondly, the jury were properly allowed to give damages be-
yond the actual injury to the vessel.   The declaration alleged
special damages, intimately connected with, and resulting from,
the principal grievance.   But, if this were an action of trespass,
in the most general form, the jury would not be restricted to
any precise rule of damages, but would be at liberty to give,
in addition to the actual damage sustained, a further sum, call-
ed vindictive, exemplary or *presumptive* damages, which, from
their nature, cannot be governed, by any precise rule, but are

*New-London,*
July,
1827.

Denison
*v.*
Hyde.

to be assessed, by the jury, upon a view of all the circumstances attending the transaction.    At any rate, the result, in this case, is perfectly equitable, and the court will not grant a new trial.

DAGGETT, J.  The defendants insist, that the charge of the court to the jury was erroneous on several grounds.

1. In relation to the effect of the decree of the district court of the *United States* for the district of *New-York*.   And to the opinion expressed on this point, the defendants urge several objections.

First, it is said, that it does not appear, by the proceedings of the court, that any monition or citation issued to these defendants   This objection cannot prevail ; for if the defendants voluntarily appeared, and submitted to the jurisdiction of the court, and were heard with their proofs on the precise question *whose was the sloop*, they are precluded, upon principles well established, from resorting to this objection.   They come too late.   The record shews, that they did appear, and were thus heard ; and they are, therefore, concluded by the decree.

Secondly, it is objected, that *T. R. Hyde* did not appear in person, nor by his proctor.   It is stated in the record, that *Jedediah Leeds* appeared for himself and *T. R. Hyde*.   The claim is signed by *Leeds*, for himself and *Hyde*, by their proctor ; and the court, in its decree, adjudges, that he shall pay costs.   On looking at this record, I cannot see, that there is any force in this objection.   The court in *New-York* must be presumed to have been satisfied, by proof, of the right and authority of *Leeds* to appear for his partner *Hyde ;* and in the absence of proof to the contrary, the record affords no countenance to the objection.

Thirdly, it is insisted, that if the decree in question did decide, that the title was in the plaintiff, when the libel was filed, on the 7th of *August*, 1824, it does not follow, that the title was in the plaintiff, on the 4th of *March*, 1824, when the trespass was committed, as declared in the charge.   Here, it is not denied, that this decree decides the question of title to this sloop, and decides it conclusively and forever, between the parties. That point was directly put in issue ; it was affirmed by the plaintiff, in his libel ; it was denied by the defendants, in their claim ; and it was found by the court, as alleged in the libel. The effect of this finding and decree, then, is to conclude the

parties forever, as to that point, howsoever and whenever it may
come in question.   *Swift's Ev.* 17.   *Phill. Ev.* 224.   *Aslin* v.
*Parkin,* 2 *Burr.* 665. 668.   *Hopkins* v. *Lee,* 6 *Wheat.* 109.—
*Betts* v. *Starr,* 5 *Conn. Rep.* 550.

But the strength of the objection is, that the decree is con-
clusive only as to the facts found, which are necessary to sustain
it ; and therefore, that the decree is conclusive only as to the
fact of title in the plaintiff, on the 7th of *August,* 1824 ; where-
as it was holden conclusive as to the title of the plaintiff on the
4th of *March,* 1824, when the trespass was committed.   This
objection, thus viewed, would be entitled to great weight, and
would perhaps be satisfactory, if the record only shewed, that
the title generally to the sloop was in question ; but it is mani-
fest, that the parties were at issue, on the trial of the libel, as
to the nature of the title, and the manner in which it was ac-
quired by the plaintiff.   In the contestations of the parties on
that point, the plaintiff alleged a title, by the conveyances of
the 14th of *January* and the 20th of *February,* 1824, which the
defendants denied, demanding strict proof thereof ; and the
court finds the title of the plaintiff *by virtue of those conveyan-
ces ;* and therefore, the conveyances are directly in issue be-
tween the parties, and directly found to have been made and
executed as alleged.   By these facts, therefore, and these only,
the decree is upheld.

For these reasons, the charge, thus far, appears correct.

2. It is contended, by the defendants, that that part of the
charge, which directed the jury to lay out of the case the record
of a judgment of the district court of the state of *Louisiana,* is
erroneous.   The Court is not informed how this district court
is constituted ; nor according to what laws its proceedings are
regulated.   It is not a court of admiralty ; because the admir-
alty jurisdiction is vested exclusively in the courts of the *United
States.*   The Court, however, from comity to the tribunals of
a sister state, would give a legal effect to the decisions of their
courts, when authorized by the established principles of law.
Yet this comity will not induce the Court to sanction a judg-
ment irregularly obtained.   This subject was very fully discus-
sed, numerous authorities cited, and an elaborate opinion giv-
en, in the case of *Aldrich* v. *Kinney,* 4 *Conn. Rep.* 380.   With
that decision, and the opinion given, I am satisfied.   It was
there decided, that a judgment obtained in another state, against
a person who had no legal notice to appear, and who did not in

*New-London,*
July,
1827.

Denison
*v.*
Hyde.

fact appear, is of no validity.   That decision is conformable to all the decisions on the subject in *Kirby, Root* and *Day ;* to the doctrine of the highest courts in *Massachusetts, New-York* and other sister states, as well as to that of the courts in *Westminster-Hall ;* and moreover, it accords with the dictates of justice.

In vindication of the charge of the judge in directing that the proceedings in the cause under consideration should be holden for nothing, the following observations are worthy of attention.

First, the record purports to be, and in fact is, of a proceeding and judgment between the defendants and *David Leeds.* There was no process against the plaintiff *Denison.* It indeed appears, that on the 8th of *June, P. J. Smith,* Esq. as counsel for him, filed a claim, that the order of sale might be annulled, and that the sloop might be restored to him.   It does not appear, that the claim was ever heard and adjudicated upon; nor that in any mode, the title to this sloop was settled, unless the the judgment in favour of the defendants against *David Leeds,* and the direction that the proceeds of the sale should be applied in part satisfaction of it, can be decreed to have that operation.   But this record, thus far, is *res inter alios acta.*   No judgment can affect others than parties or privies to it.   The decree of a court of admiralty, which this is not, binds all the world, only because all the world are, in contemplation of law, parties to it.   If, under our law of attachments, *A.* should seize the property of *B.,* on a process against *C.,* and should, on the process, obtain judgment, and on the execution, sell the property, certainly *B.* could maintain trespass against *A.,* and the judgment between *A.* and *C.* could not be admitted in evidence. These principles are too familiar to need farther illustration.

Secondly, if it be said, that the judgment in *New-Orleans,* by strong implication, furnishes proof, that the sloop was the property of *David Leeds,* as it directed that the process should be applied to the judgment, it may be answered as above, the plaintiff does not, by the record, appear to have been heard on that point, nor to have been made party for the purpose of being heard ; and he, therefore, cannot be affected by it.

Thirdly, this judgment in the court of *Louisiana* was rendered on the 14th *December,* 1824; but on the 3rd of *November* previous, the district court of the *United States,* on a full hearing of the question of title to this sloop, with the proofs of the parties to the point in issue, the plaintiff and defendants en-

deavouring to establish their rights, did decree and adjudge,that <span></span>New-London, July, 1827.

the title was vested in the plaintiff.    Now, the defendants cannot interpose a judgment of the court of *Louisiana*, made on a subsequent day, even if it did bear on this question.    The decree in *New-York* cannot be affected, in this indirect manner, by the judgment in *New-Orleans*.

Denison
v.
Hyde.

Fourthly, the sloop was seized in *New-Orleans*, on the 4th of *March*, by the defendants, and sold, on the 30th of *March*, by order of the court, on a process to which the plaintiff in no sense was then a party.    The tort was then com, lete ; and an undoubted right of action in the plaintiff then existed.    To give the utmost effect to the subsequent claim and appearance of the plaintiff in the court of *Louisiana*, it could amount only to an attempt to obtain a restoration of the property, which attempt was not prosecuted, and upon which no judgment was ever rendered.

If it be urged, that the court in *Louisiana* must be presumed to have exercised their jurisdiction discreetly ; that by the laws of that state, the property of one may be thus taken, without causing the owner to be made party to the suit; this doctrine cannot be admitted.    There is no proof that laws of that character are in operation ; and if such laws do there operate, it is too much to ask of a court in this state to give them effect. The laws of no other state operate *proprio vigore* in our courts. Effect is given to them, when they are not contra *bonos mores*, nor opposed to the safety of the state, nor to sound policy. Any law authorising a process, by which the property of *A.* can be taken to satisfy a debt against *B.*, or for any other purpose, without giving to *A.* notice to defend, is opposed to common right, and ought not to be enforced by any tribunal.

In my opinion, then, the charge was correct, in respect to the record of the court of *Louisiana*.

3. It is insisted, that the charge was incorrect, in instructing the jury, that damages might be given for the detention after the sloop was in possession of the plaintiff, by a purchaser under the decree of the district court in *New-York*, and down to the date of the writ.    It appears, that the defendants urged the restoration of the sloop, on a day previous to the date of the writ, in mitigation of damages.    The facts showed, that she was restored only by the substitution of the plaintiff's money for her value as sold.    Had the libel of the plaintiff been dismissed, and had the defendants' claim prevailed, they would have re-

*New-London,*
July,
1827.

Denison
*v.*
Hyde.

ceived the amount.    The sloop, therefore, was substantially withholden from the plaintiff, by the wrongful acts of the defendants; and I discover no reason why they should not respond therefor in damages.

4. Another objection to the charge, is, that the jury were told, that they were at liberty to presume the damage and expence, which might arise in the recovery of the property, and for the forcible invasion of it, as well as for the injury the vessel had sustained, by the alleged trespass, and give damages accordingly.

That there is no precise rule of damages, in actions of this description, is admitted. If the property, by the tort, be wholly destroyed, or only deteriorated, the jury are to judge, under all the circumstances accompanying the transaction, to what damages the plaintiff is entitled.   If this sloop had been wrongfully taken from the possession of the plaintiff, in the port of *Stonington*, and conveyed to the adjoining port of *New-London*, less damages might be sufficient to compensate the plaintiff, upon those equitable principles which govern in giving damages in actions of trespass, than if seized at a distance of 3000 miles, and by the trespassers sent on a distant voyage.

In *Edwards* v. *Beach* & al. 3 *Day* 447., it was decided, that in an action of trespass for destroying the plaintiff's sign, of the value of 20 dollars, and in which 50 dollars damages were given, the value of the property, or the amount of injury done to it, was not the only ground of damages, but that the plaintiff was entitled to recover for the force and injury, according to the nature and circumstances of the case, and the aggravation attending it.   The same doctrine was laid down in *Nichols* v. *Bronson*, 2 *Day* 211. and afterwards recognized in *Churchill* v. *Watson*, 5 *Day* 140.   Not only the direct damage, but the probable or inevitable damages, and those which result from the aggravating circumstances attending the act, are proper to be estimated by the jury.

In every view of this case, I am satisfied, that the charge was correct; and that the superior court be advised, that the rule for a new trial be discharged.

HOSMER, Ch. J. and PETERS and BRAINARD, Js. were of the same opinion.

LANMAN, J, dissented, on the ground that the district court

of *New-York* could not set aside the proceedings of the court in *New-Orleans.* On the other parts of the case, he expressed no opinion.

*New-London,*
July,
1827.

Denison
*v.*
Hyde.

New trial not to be granted.