## Case No. 13,609.

### SUMNER v. MARCY.

[3 Woodb. & M. 105.] [1]

Circuit Court, D. Maine. May Term. 1847.

CORPORATIONS—ULTRA VIRES—FOREIGN CORPORATION—EFFECT OF JUDGMENT AGAINST—INDIVIDUAL LIABILITY OF SHAREHOLDERS.

1. Where a corporation was chartered for sawing and manufacturing wood, and allowed a capital of $150,000, one half personal and half real estate, it cannot legally invest money in a bank for the purpose of carrying on the business of banking. Nor can it buy shares in such an institution to more than double its authorized capital of personal property, and bind

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

the corporation or members for the payment of promissory notes given therefor.

[Cited in Marbury v. Kentucky Union Land Co., 10 C. C. A. 393. 62 Fed. 351.]

[Followed in New Orleans, etc., Steamship Co. v. Ocean Dry-Dock Co., 28 La. Ann. 173.]

2. Where an action is instituted in New York against such a corporation chartered in Massachusetts, to recover such notes and to secure property of the corporation situated in the former state, but no notice given to the corporation in the latter state, the recovery is not probably binding on the corporation or its property in Massachusetts, and certainly cannot be enforced against it or its members individually, without a new judgment in the latter state. If its president, living then in New York, appeared to defend the suit there, but abandoned it without a hearing and opinion on the legality of the transaction, the judgment ought not to affect the members in Massachusetts in their individual capacity, who had no notice or opportunity to defend the action in New York.

[Cited in Sawyer v. Gill, Case No. 12,399.]

3. Where members, in their private capacity, are by statute made responsible for debts of a corporation, it can be only in the mode and under the facts specified in the statute; and to prevent the recovery in such a case in Massachusetts, on the New York judgment, a member will be allowed a temporary injunction against the action, so as to affect his property individually.

4. The judgment, recovered in New York, in order to reach the property situated there, is entitled to no more force in Massachusetts than in New York, and there it does not bind the members individually; and when recovered like this, without actual notice to the corporation in Massachusetts, its validity at all in the latter place is questionable.

[Cited in Tenney v. Townsend, Case No. 13,-832.]

5. If a member of such a corporation objects and protests against a measure, which is within its competency, he is still not exonerated individually from the debts consequent on it, unless he seasonably sells out or withdraws as a member.

This was a bill in chancery [by William H. Sumner against William L. Marcy] praying for an injunction to stay proceedings in a certain action at law pending in this court by the respondent against the East Boston Timber Company, and that action had been instituted at this term in the name of Marcy, by a service on the defendant, as a member of said company, and is founded on a judgment recovered against that company in the state of New York in May, 1840, for $68,000. Certain property of that company, then situated in the state of New York, was attached and sold on the execution that issued on the judgment, and the company having become insolvent, no proceedings were had in this state on the judgment to enforce the balance till the commencement of the action before referred to in March last. This was done with a view to recover judgment here against the company, and then collect the balance from the private property of the defendant and others, members of the company, and liable by the laws of Massachusetts to respond for the legal judgments recovered against it in this state.

But, though a member of the East Boston Timber Company, the complainant avers that he is not liable for said judgment, because the drafts and obligations which constituted the ground for the above judgment recovered in New York, belonged to the City Bank, of Buffalo, and were the originals or renewals of originals executed by said company for a large number of shares purchased in that bank under a vote of it passed in 1838; and which shares, if not entirely owned at that time by the bank, stood pledged to it by J. May, the president thereof, and the bank had full notice of the objections made to the powers of the company to buy or pay for the shares legally. It further averred that the bank failed in 1840, and its effects, including these obligations, were placed in the hands of William L. Marcy, as public receiver, and the judgment on them was recovered in his public capacity as receiver: that, in the trial which preceded said judgment an appearance was entered by the president of the company, and J. S. Talcott. Esq. was employed as counsel. The latter assented to a verdict for the plaintiff, subject to exceptions to be filed and argued, raising the question whether said company had not exceeded its legal powers in purchasing the bank shares before named, and in executing obligations therefor; but said counsel, not being paid for attention to the suit, abandoned it, and judgment was rendered on the verdict without those exceptions being filed or decided on by the proper court in New York. The bill next set out that the plaintiff was entirely ignorant of the suit, or those obligations, till long after the judgment rendered upon them against the company. That the defence against it was well founded on the part of the corporation, and is more especially so by the complainant, who, as a member at the time of the vote by the company to purchase the bank shares, protested against the legal power of the company to do it, for the purpose, as then averred, of getting the control of the bank and thus obtaining loans and facilities in carrying on their works, part of which were conducted in the state of New York, in the neighborhood of Buffalo, where the bank was doing business. It then averred that the complainant resisted the purchase as illegal, and, as a member and director, voted against it in all stages; and hence, he prays that the further proceeding here to recover a judgment in Massachusetts on the judgment rendered in New York be enjoined against, so far as respects him and his liability as a member to contribute towards the payment of it. The cause came on to a hearing for a temporary injunction, without any pleadings, at this term. The books of records of the company were put in as evidence, with the charter and the affidavit of Talcott, their counsel in New York, and the affidavit of Joseph C. Broadhead, one of their agents employed

in said bank as its vice president. The substance of this procedure, so far as material, will be given in the opinion of the court.

B. R. Curtis, for plaintiff.
B. Sumner and Goodrich, for respondent.

WOODBURY, Circuit Justice. I cannot bring my mind to doubt the propriety of at least a temporary injunction in this case, as to further progress in the action at law in behalf of the respondent, so far as it may be prosecuted to affect the complainant. The first objection to it, on the face of the proceedings, is that the parties are not the same, and hence the complainant has no right to ask it. But this is overcome fully by the admitted fact, that the complainant is not only one of the members of that company, and interested in its corporate property, if any remains, but, by the laws of Massachusetts (Rev. St. c. 38, § 30), has a still deeper interest, by being made responsible in his individual capacity for any judgments recovered in this state against the company, and not satisfied by the property belonging to the corporation. Indeed, his only chance of defence, if the company is negligent or unfaithful in resisting illegal claims, and his only mode to repel and defeat judgments for such claims against it, which would bind him, is by applying originally and being allowed to defend in its behalf; or if judgments have already passed against the company, without his knowledge, and against which no defence can now be made, either in its behalf or for the benefit of its innocent shareholders, the only remaining remedy is probably by a bill, as in this case, to enjoin against further proceedings in the suit at law on the New York judgment. The latter mode, under the facts in this case, seems most speedy and effectual in the first instance, as a temporary security, till inquiry and consideration can be had as to other modes of redress, if any permanent relief should, on full examination, appear proper.

The respondent denies any illegality in the grounds of the judgment already obtained, either as regards the company or the complaint. Hence the next step is to investigate how that matter stands under the present aspect of the case. Firstly. Had the company legal authority to purchase and give notes and drafts for these shares in the City Bank of Buffalo? Secondly. If it had this power as a corporation, is the complainant exempt, by his opposition and protest against the purchase, from being legally held to discharge such judgment as can legally be recovered in this state against the company for the purchase money? As at present advised, my views are in favor of the complainant on the first point, but not on the second. I think the company transcended its legitimate powers in buying the shares, but do not think that a stockholder can, in law, be exonerated from his statutory responsibility, in cases

generally, however much he may individually resist or protest against a purchase. If he still continues a member, not selling out or abandoning his membership before the purchase, and the purchase is found to have been legal, the legal consequences must attach to him, however indisposed he was towards the transaction. He must not remain a member, in such a case, and take the benefit of the purchase. If he does, he must bear its burthen, as imposed by law, when the purchase is legal.

The reasons which influence me to the conclusion that the purchase here was illegal, are these: This company was authorized to act as a corporation for purposes connected with timber, and not banking. Its business, as described in the charter, was to "saw and vend lumber and manufactures from wood." Its whole capital was but $150,000—half personal and half real estate. This happened in 1834, and in 1837 the proposition was first introduced by S. White, its president, to purchase shares in the City Bank, at Buffalo. The illegality of such a purchase for the avowed purpose of getting the virtual control of the bank, by owning $168,000 of the capital, out of $400,000, and thus effecting loans to the company by conducting the bank through its agents, as well as thus violating its charter in another respect, by the investment of so large a sum, viz.: $168,000 in these shares, when their authorized capital was only $150,000, and but half of that in personal estate—was fully exposed by the complainant, and discussed at various meetings before the purchase. But in 1838, a vote at a meeting of the stockholders having passed to purchase the shares, they were bought, in that year, by the directors, and drafts and notes were given for the consideration; a part of which, or the renewals of them, constituted the grounds of the judgment afterwards recovered against the company, in New York. The shares were chiefly bought of John B. May, the president of the bank, but with the knowledge of the officers of the bank, (when the notes were delivered to them for May's obligations and pledge of this same stock,) what the consideration of them was, and what objections had been made by the complainant to their validity.

It thus becomes necessary to decide whether the bank would have been bound to suffer for their invalidity without this knowledge and notice. Though such a result seems just, without positive knowledge or notice, when the whole transaction is by statute unjustifiable and the notes and drafts are signed by the agent of the company, as agent. Hence, his authority ought to be inquired into; and, the more especially, when the amount was so large and unusual. Otherwise, all risk seems to be assumed. Chit. Bills, 32; Bayley, Bills, 72; 5 Taunt. 792; [Mechanics' Bank of Alexandria v. Bank of Columbia] 5 Wheat. [18 U. S.] 337; 7 Barn. & C. 278. Tracing this affair onward, the company, aft-

er the purchase, proceeded to elect one of its agents vice president of the bank, and to control its operations till the failure of both the bank and the company, in 1840. All these facts were proved by their agent, the vice president, and there was no contradictory testimony to be weighed on any point. On the face of this transaction, there can be no doubt that the purchase of these bank shares—for such purposes—was a most dangerous experiment by a timber company. The legal objections, that it related to a matter not within its corporate powers, and went in amount entirely beyond its own authorized capital, are fatal to the validity of it. Such a company was not created for carrying on banking business, either in Massachusetts or elsewhere. And though in the course of its collections and sales it might take, on execution for a debt, a bank share, that would be a mere incident to a legitimate power of collecting its debts. Even then it would be taken to sell again, and not for the purpose of making such an investment permanently, and of thus embarking or aiding in the business of banking. The avowed powers of the company, in the charter, were the sawing and vending of lumber and manufactures of wood, and not of making paper money, or borrowing and lending money, as a branch of business. A principal power or grant, conferred by a statute or charter, is not to be construed to carry, as an incident, anything not implied in the principal—not usually appurtenant to it, and not possessed of a similar character. Beatty v. Knowler's Lessee, 4 Pet. [29 U. S.] 152. Nor can it include anything which would have been refused as a principal. Or anything, on the most liberal construction justifiable, which is not necessary and proper to carry the principal express powers into effect. 2 Kent, Comm. 298; 9 Conn. 180; 5 Conn. 560; [Head v. Providence Ins. Co.] 2 Cranch. [6 U. S.] 127; Beatty v. Knowler's Lessee, 4 Pet. [29 U. S.] 152; 15 Johns. 383; 15 Wend. 259; Hunter v. Marlboro [Case No. 6,908]; Slark v. Highgate Archway Co., 5 Taunt. 792; 2 Cow. 667, 678.

Now, although the company might be obliged to borrow some in carrying on its legitimate business, it is too far-fetched to hold that in order to do it they are authorized to obtain acts of incorporation, and engage in banking, or to unite with others in that business in institutions already in existence, so as to be able in this way to lend to themselves. If they can lawfully embark in the business of the bank, and purchase its shares in order to facilitate loans from it, they can lawfully embark in any business which the lenders of money follow, and which may appear likely to further the loans desired. Thus, if a lender be a manufacturer of cotton, they may engage in that; or a maker of patent medicine, or an adventurer in the whale fisheries, they may engage, also, in such branches of business. And by a parity

of reasoning the whole limitations and character given to a company in its charter for sawing and manufacturing wood, may be prostrated, and an act of incorporation for one object may be converted into one practically for all objects.

The cases which tend to sustain the views opposed to such a latitude of construction, may be seen in the citations before made, and in all our writers on constitutional law—in the debates in congress on the constructive powers of the general government for the last half century, and in the various decisions of the supreme court, relating to that class of questions. The whole doctrine of sound constitutional construction of all political charters rests on a like basis; and must, in my view—as thus construed by many jurisprudents—serve to sustain the limitations above named, as imposed on charters for business. Such, likewise, is the express limitation on the granted powers in the constitution of the United States, having, doubtless, been introduced as proper from an analogy to the rule in respect to private charters. But, beyond this, the company in so large a purchase violated virtually, if not in terms, the provision of its charter restricting its capital stock to $150,000 and its personal property to half that amount, and to this extent, for the purposes of the business authorized, and for no other business. This provision is in the second section of the charter, and is in terms, as well as spirit, prohibitory and imperative:—"Be it further enacted that no corporation may lawfully hold and manage such real estate not exceeding $75,000 in value, and such personal estate not exceeding $75,000 in value, as may be necessary and convenient for the purposes aforesaid."

After all this, it cannot be equitable that the plaintiff should be subjected to pay the judgment recovered in New York, which could have been successfully defended by the company, or its agents there, had due attention been continued by them to the action, till a final hearing. That judgment is not binding in this state, without suit, even on the corporate property, and whether it can be defeated here now by the company, or not, after its neglect in New York, (and which it is not necessary at this time to decide,) it certainly is not just to allow such a judgment to be perfected here so as to bind, individually, a member of the corporation who did not know of this suit in New York before judgment, and hence, could not defend it; but who protested, originally, against the legality of the demands there sued, and resists them now. His only remedy may be such an injunction as is now prayed for. At least it is conscientious and fit he should have it temporarily, till others can be attempted, or this one further examined before made perpetual. This course comes fully within the rule laid down by Chief Justice Marshal. in Marine Ins.

Co. v. Hodgson, 7 Cranch [11 U. S.] 333, "that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of.law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery." The complainant himself could not have availed himself of this defence in New York, because he was not in person sued there, nor notified of the suit against the company. Nor was the company, as a corporation, his agent there, and he bound by its acts and neglect, as might be the case when it is sued here—a place where the company is incorporated and can be duly notified. Another reason for this conclusion is, that a judgment recovered in New York does not bind the members there, individually, like one recovered here; and hence the company, when sued there, may not be considered by law to act as their agent to affect them, individually. But the judgment there is generally held to bind only the property of the company situated there, or attached there. Unless defended there by the company and tried fully, it is certainly questionable in equity, whether it binds even the company or its property in this state. much less a member individually. Mayhew v. Thatcher, 6 Wheat. [19 U. S.] ·129. It is a species of proceeding in rem, as to the property there, but usually charges neither the person nor property situated in another state. Williams v. Preston, 3 J. J. Marsh. 600; 1 Mo. 517.

Without conclusively settling this point now, it has often been decided that if no notice appears on the record to have been given to the defendant living in another state, and he does not actually get it and come in. he is not bound by the judgment. Harrod v. Barretto, 1 Hall, 155, and 2 Hall, 302; 8 Cow. 311; 6 Pick. 232, 354; 4 Conn. 380; 6 Conn. 508; 8 Johns. 194; 1 Ham. [Ohio] 206; 5 Wend. 148; 6 Wend. 447; Thurber v. Blackbourne, 1 N. H. 242. But even when appearing and defending and hence bound in law, it may be in equity that if the point now raised was not considered and adjudicated there, that judgment should not, on sound general principles, bar even the parties to it, as to what was not adjudicated, unless gross neglect to put in and prosecute the defence on that point existed and should operate against them. Burnham v. Rangeley and Greely v. Smith [Cases Nos. 2,176 and 5,749]. But no reason whatever exists, either in law or equity, why it should bind others, not parties and not guilty of such neglect, unless they are bound by mere operation of law, as privies in contract, or estate, or by express statute. Downs v. Fuller, 2 Metc. [Mass.] 135. When members of corporations are so

bound by judgments against corporations, it is, as a general rule, only to the extent of their corporate property. They are not bound in their private estates at all, except where made so by express statutes; and then, of course, only in strict conformity to such statutes. Now, the statute of Massachusetts, which renders members of corporations liable in their private capacity to answer judgments against the corporations, makes them liable only when judgments are recovered in this state; or in other words when the execution on them can be executed here. Hence, the respondent is not obliged, as a party or a privy, to pay individually the judgment recovered in New York, while remaining merely as one recovered there.

But, it is argued, that although the judgment there does not admit an execution to be there sued out on it and levied on a member's property, living out of New York, as it can run only within the limits of that state, yet in their action on it here, that judgment must be deemed to have the same effect as if recovered here, and hence no resistance can be made to it here, by injunction or defence, which could not be made to a domestic judgment recovered in this state. Were this proposition correct it would operate very strongly against the complainant's prayer in this bill. But there are two answers to it: Firstly. In New York, members of corporations are not, in their private capacity, liable at all for judgments recovered against the corporation. Nor are sureties there responsible for judgments against their principals, without a separate action against them and an opportunity thus enjoyed by them individually to defend against the claim. 4 Hill, 522; 5 Hill, 121. In the state of Maine also, the suit to charge a member individually is nominally against the bank, but his property is attached and he is notified and defends if he pleases. Even in Massachusetts, the members individually are considered as guarantees or sureties, and allowed to recover contribution as such. 10 Pick. 123. Though, in the first instance, they are bound by the judgment here against the corporation. 8 Pick. 455; 14 Pick. 68; 3 Metc. [Mass.] 44. But the second answer is more decisive, and is, that a judgment recovered in one of the United States does not have the same effect in another state as a judgment would recovered in the latter, but as one recovered in the former. Such is the fair construction of the words used in the act of congress. Hampton v. McConnel, 3 Wheat. [16 U. S.] 235; 3 Story, Const. 183. Such too, is the plain requirement of principles. If all the force is given to a judgment in another state which it would have at home, no cause of complaint exists; and, to give it more, would change and transcend its import as well as essence. If it is not conclusive at home on third persons, why should it be elsewhere? If it does not at home bind private property, when recovered against a corporation, why should it abroad?

It is urged, likewise, against this injunction, that the party asking it must have been guilty of no neglect himself, and that here the complainant has been so guilty. Protheroe v. Forman, 2 Swanst. 227. But there has been no neglect by him pointed out, unless it be to defend in New York. It is to be remembered, however, that the suit there was a statutory one, without any notice to the company, much less its members here, and was brought merely to secure property lying within the limits of that state. It is a sort of proceeding in rem. The appearance there was procured by the president residing there at that time, and choosing to answer for purposes there, and not by a vote or order by the company here, and the counsel there abandoned the cause, because not properly paid by the company or any of its agents. No evidence is offered that the company here knew of the existence of that suit, much less its members or directors here. Story, Confl. Laws, §§ 457, 461, 546, 549. So far then as regards the company and its property here, probably, and, a fortiori, its members here individually, it was a suit there without notice, a judgment without summons or appearance, and, by reason, as well as adjudged cases, void. See cases cited in Suffolk Bank v. Merrill, Maine Dist., May term, 1848 [unreported]; Thurber v. Blackbourne, 1 N. H. 242; 15 Johns. 121; 1 Camp. 65; 2 Scott, N. R. 138; 9 Dowl. 27; [The Mary] 9 Cranch [13 U. S.] 144; 3 Wils. 303; 11 Adol. & E. 179; Buchanan v. Rucker, 9 East. 192; 1 Man. & G. 288. Now it is certain that a member, individually, would not have been allowed to defend there against an action thus situated, it being a local proceeding to affect the corporate property situated there, and not to affect a private member living in another state. 2 Paige, 402. The whole concern was in hopeless insolvency, and from the long lapse of time since, without any proceedings here, probably no remedy or prosecution here was then contemplated. Indeed, there was such a practical de facto dissolution of the company here, that any remedy or relief seemed hardly feasible; and no blame surely can attach to a member for not making a defence, in New York, against a claim of which he had no notice, and by the judgment on which there he or his property could not probably be bound here, either in justice or law. The courts in New York, if resorted to, could not have enjoined against using their judgments in the courts of the United States, in Massachusetts, any more than the courts of the United States can enjoin against proceedings in state courts. [Diggs v. Wolcott] 4 Cranch [8 U. S.] 179; [M'Kim v. Voorhies] 7 Cranch [11 U. S.] 279.

It is said, in further objection, that after a judgment at law has been recovered, no relief will be given. Lane v. Williams, 6 Ves.

798. But that means a judgment at law against the party applying for an injunction, and on a ground for which a defence was open in the suit at law and negligently omitted. 3 Daniel, Ch. Prac., 1840. Neither of these facts existed here, as we have already seen.

It has been objected, also, that before issuing this injunction, the complainant should be required to pay into court the amount of the judgment recovered against the company. But that would be oppressive when that judgment is not against him personally, nor against the corporation of which he is a member, so as to bind him personally, till further proceedings are had on it in this state and judgment recovered here upon it.

In this condition of things, the utmost which seems proper is, to require a bond from him not to change the state of his private property while these proceedings are pending, so as to render it less exposed to be levied on by any execution issuing in this state against the company. On filing such a bond, I think a temporary injunction should issue; and when the answer is filed and further evidence adduced, it can be decided on new motions, whether this injunction ought to be made permanent or be dissolved.