WEST-END NARROW-GAUGE RAILROAD COMPANY, Respondent, v. LOGAN D. DAMERON, Appellant.

### October 30, 1877.

A railroad corporation cannot, under the statute, purchase the subscription notes or obligations given by stockholders to another railroad corporation, and enforce them against the subscribers; and the fact that one railroad corporation has bought the road-bed of another railroad corporation, intending to complete the road, gives the purchaser no right to purchase the vendor's stock subscriptions and enforce them against the subscribers.

APPEAL from St. Louis Circuit Court.

Reversed and remanded.

JOHNSON & CAUSEY, for appellant: Ultra vires. — Daniels v. St. Louis, Kansas City & Northern R. Co., 62 Mo. 43; Matthews v. Skinker, 63 Mo. 329; 23 How. 381; 24 Conn. 159; 34 Vt. 144. Powers of corporations to purchase or assign subscription stock. — Hallowell et al. v. Hamlin, 14 Mass. 180; Bank of Hartford v. Barry, 17 Mass. 97; White v. Syracuse, etc., R. Co., 14 Barb. 559.

CHANDLER & YOUNG, for respondent.

HAYDEN, J., delivered the opinion of the court.

This is an action founded upon a subscription made by the appellant to the capital stock of the Central Railroad Company. That company was organized under the general laws of this State, and by the terms of the subscription the appellant bound himself to pay five per cent of the amount subscribed in cash, and the remainder upon such terms as the board of directors might from time to time prescribe

by ordinance, by-law, or resolution. The name of this
company was afterwards changed to the " St. Louis and
Florissant Railroad Company." Instalments were called
for by resolutions of the board of directors, but the com-
pany never had any by-laws. After constructing its road-
bed the company became largely indebted, and, under
authority of a vote of its stockholders, the directors, by
resolution and a deed made accordingly, conveyed to trustees
its road, right of way, and all its other property, to secure
its indebtedness. Among · other property described were
the choses in action of the company, among which were the
subscription obligations. Under a power of sale in the
deed, all the property of the company was sold by auction
and bought by an individual. In the deed to him were
named, as part of the property conveyed, " the choses in
action and debts owing to said company," and among these
was classed the obligation of the appellant to pay the assess-
ments which are sued for here. The purchaser at the trus-
tee's sale conveyed all the property to the respondent,
which is a corporation organized under the general laws
of this State. The court below gave judgment for the
respondent in the amount of the assessments, and the case
is here by appeal.

The first question which arises is as to the right of the
respondent to sue, and this depends on the question whether
it was within the corporate power of the respondent, by vir-
tue of its purchase, to acquire title to and hold the chose in
action sued on; if not, it is unnecessary to discuss the
other questions which have been raised. For the purposes
of this case, it may be admitted that it was within the
power of the respondent to acquire, by purchase, the road,
right of way, and track of the Florissant Company, and
whatever land and tangible personal property of the latter
were necessary for the purpose of carrying out the objects
of the respondent's charter. It is said the respondent is a
corporation which was formed for substantially the same

purposes, and has substantially the same powers, as the Florissant Company, and could as well purchase as construct a road-bed and railroad. But, apart from any statutory or express authority, does the fact that these subscriptions were subscriptions to the stock of the one company authorize the other company, the present plaintiff, to purchase and enforce these obligations? It seems to be assumed that the fact that the subscriptions were originally made to the stock of a company which was organized for the purpose of building and running the railroad which is now the property of the respondent is a fact of legal significance in this case; and that the respondent here, having bought other property, which was the property of the Florissant Company, has peculiar rights in the premises. But it is difficult to see the legal grounds of such an assumption. The respondent did not become in law the successor of the Florissant Company so as to make stockholders in the latter company stockholders in the respondent. The point of connection between the two companies, if it can be called such, is that the respondent purchased from a third person, who had purchased from the trustees of the Florissant Company. The power of the respondent to purchase the chose in action here in question depends on the nature of the property, not on its physical surroundings. We are not now concerned with the consideration moving from the Florissant Company which formed the inducement to its subscribers to make their subscriptions, but with the obligations of the subscribers to pay their assessments. If the respondent could buy and hold the road-bed, the right of way, and the railroad-ties, it is because of the nature of the property bought and the character of respondent's powers, not because the property had once been the property of the Florissant Company, or was described in a particular deed of trust. If the respondent could not go into the market and, by virtue of the powers given to it by our general laws relating to such corporations, buy up and

enforce against subscribers subscription notes or obligations which had been given by stockholders to stranger corporations, then it cannot buy and hold these subscriptions. The physical and accidental connection can make no difference in the legal view. The question is still as to the power of a corporation to purchase and hold a particular kind of property; and it can with no better reason be contended that the corporation can hold this kind of property because, owing to certain occurrences, a certain physical connection exists, than it could be contended that a railroad company had power to engage in the business of coal-mining because a coal-bed had been found near the line of its road.

As an incident to its powers, a railroad company may receive notes, bills, and other obligations for the payment of money, and may, of course, collect and dispose of them. *Buckley* v. *Briggs*, 30 Mo. 452 ; *Hardy* v. *Merriweather*, 14 Ind. 203 ; *Fry* v. *Tucker*, 24 Ind. 180. But here, even leaving out of view the peculiar character of the subscription obligation, the respondent did not receive it as a payment, or take it in exchange, or incidentally in the course of its business. It voluntarily purchased the subscription obligation, and, as it would appear, as a speculation. At any rate, there is no evidence tending to show that the purchase was other than the buying up of certain claims in order to make money out of them. The buying of securities or obligations in order to make a profit by holding, selling, or enforcing them is a substantive business, and the precise class of obligations purchased is material only as tending to show more plainly a departure from the limited powers. The wholesome restrictions by which, generally, in this country, the exercise of incidental and auxiliary powers of corporations have been restrained within reasonable limits relieve the present case from any serious doubt upon this head. *Mayor of Baltimore* v. *Baltimore & Ohio R. Co.*, 21 Md. 50 ; *Sumner* v. *Marcy*, 3 Woodb. & M. 105 ; *Talmage* v. *Pell*, 7 N. Y. 328 ; *Berry* v. *Yates*, 24 Barb.

199; *Mechanics', etc., Assn.* v. *Meriden, etc., Co.*, 24 Conn. 159. If any business corporation may, without regard to the particular character of its business, engage in speculative transactions in securities or obligations of third persons, merely because its directors or stockholders believe that by such measures the property of the company may become enhanced in value, then the doctrine that a corporation possesses only the powers given to it by its charter is practically at an end.

In *Pacific Railroad Company* v. *Seely*, 45 Mo. 212, it was held that the plaintiff, though authorized to acquire land for the purposes of its charter, had no power to bargain for and receive a piece of land by way of speculation, and that such a contract was void; and the Supreme Court of this State has carefully observed the distinctions which separate substantive from auxiliary powers. *Matthews* v. *Skinker*, 62 Mo. 329; *Hoagland* v. *Railroad Co.*, 39 Mo. 451; *Western, etc., Assn.* v. *Kribben*, 48 Mo. 37; *Blair* v. *Insurance Co.*, 10 Mo. 559. It was, doubtless, the intention of the Legislature to insist on these restrictions upon corporate powers when it provided that, in addition to the powers enumerated in the 1st section of the general act, and to those expressly given in its charter or in the act under which it is incorporated, no corporation shall possess or exercise any corporate powers except such as shall be necessary to the exercise of the powers enumerated or given. Wag. Stat. 290, sec. 6.

It is obvious that this case is not within the provisions of the act of March 24, 1870 (Wag. Stat. 315, sec. 57), relating to companies whose lines of road " are continuous or connected at a point either within or without this State," etc. *Daniels* v. *Railroad Co.*, 62 Mo. 43. Here the evidence shows no such state of facts as to bring the case within that provision.

The respondent had no power to purchase or hold this subscription, under the facts of the case, and accordingly

the judgment will be reversed. As, possibly, there may be further evidence, the case will not be dismissed here, but will be remanded. All the judges concur.