St. Louis Stoneware Company, Respondent, *v.* Stephen Partridge, Appellant.

### January 13, 1880.

1. The finding of a referee stands as the verdict of a jury, and where there is evidence from which the fact found may be inferred, the finding will not be disturbed in the appellate court on the ground that there is no direct testimony as to the fact found.

2. Where the president of a corporation, with other officers, bought stock for the corporation, and is sued for the unlawful conversion of the stock, he cannot set up the doctrine of *ultra vires* as a defence to the action.

Appeal from the St. Louis Circuit Court.

*Affirmed.*

James O. Broadhead, John P. Ellis, and James E. Withrow, for the appellant: The plaintiff had no power to hold stock in any other corporation, and the pretended purchase of such stock was *ultra vires* of the plaintiff. — *Matthews* v. *Skinker*, 62 Mo. 329 ; *Bank* v. *Harrison*, 39 Mo. 433 ; *Baird* v. *Bank*, 11 Serg. & R. 411 ; *Chataqua County Bank* v. *Risley*, 4 Denio, 485 ; *Bank of Michigan* v. *Niles*, 1 Dougl. (Mich.) 401. The court may set aside the finding of a referee, and on the facts as presented by his report, find a different result, and enter up a decree accordingly." — *O'Neil* v. *Capelle*, 62 Mo. 203 ; *Ely* v. *Ownby*, 59 Mo. 437. The report of the referee must not be in conflict with the merits of the cause or the court's view of the law. — Edw. on Ref. 149 ; *Scranton* v. *Baxter*, 4 Sandf. 5. A referee's report will be set aside for error where the grounds are not explicitly stated by him, or error is apparent on the face of the record.— Edw. on Ref. 149 ; *Smith* v. *Crews*, 2 Mo. App. 269.

George Denison and Edmund T. Allen, for the respondent: In this action the defendant cannot invoke the doctrine of *ultra vires* as a defence. — *Grant* v. *Henry Clay Coal Co.*, 80 Pa. St. 208 ; *Harrisburg, etc., R. Co.* v. *Grubs*, 82 Pa. St. 36 ; *Willamette Falls Co.* v. *Kittredge*, 5

Reporter, 104 ; *Mutual Life Ins. Co.* v. *Wilcox*, 5 Reporter, 681 ; *Martindale* v. *Kansas City, etc., R. Co.*, 60 Mo. 508 ; *Baird* v. *Bank*, 11 Serg. & R. 411.

HAYDEN, J., delivered the opinion of the court.

The present is one of three suits which, for the purpose of taking testimony, were consolidated and heard together before a referee. For a fuller statement of facts, reference is made to the opinion delivered in No. 1343, called the equity case. It is sufficient here to state that Merrick & Stickney, copartners, engaged in the stoneware business, and in December, 1865, they and the defendant organized a business corporation under the act of February, 1864, called the St. Louis Stoneware Company, of which the defendant became president and Stickney secretary. The three, as among themselves, treated this concern as their joint property, they being the only stockholders for a long time, and in dealing with the assets they acted as joint owners. The present suit is for the conversion of certain bank-stock of the plaintiff, the petition charging that in November, 1872, the plaintiff owned twenty-five shares in the Valley National Bank, worth $100 a share, which the defendant, as plaintiff's president, assigned to one Moses, as trustee, whereby the bank stock was lost, the defendant never accounting for the proceeds. The defendant denied these allegations, and set up defences which do not appear except from the referee's report.

The Stoneware Company appeared on the books of the bank to be the owners of the twenty-five shares, a certificate of which had been issued by the bank on January 3, 1872, and was in the custody of Merrick, or the firm, for several months. On December 20, 1872, this certificate was transferred to Moses, an employee of the bank, by indorsement, signed by the defendant as president of the Stoneware Company, authorizing Moses to transfer the stock on the book. On the same day the defendant, as president,

·executed on the stock-book of the bank an assignment to Moses, as trustee, reciting that $2,500 had been paid on the stock; this transfer being in trust for the bank, and being made for the purpose of paying a promissory note of $2,500 which was made by the firm of Merrick & Stickney, and indorsed by the defendant and held by the bank. This note represented, by renewals, the original note made by the firm and indorsed by the defendant, given for these shares of stock. The stock subscription, however, was made in the name of the plaintiff company by the three corporators, it being understood, when the subscription was made, that the bank would make the payment easy and carry the note for the stock.

It is contended by the defendant that there was no conversion of this bank-stock; that the plaintiff never paid for the stock out of its assets, and that the only way in which the shares were paid for was by the discount and renewal of the note, on which the defendant was either maker or indorser. But it is not open to the defendant to urge this objection, as the referee has found that the bank-stock was paid for with the plaintiff's assets, and was its property at the date of the transfer by the defendant to Moses. It matters not that no witness testifies that the bank-stock was so paid for with the plaintiff's assets and was its property at the date of the transfer by the defendant to Moses. It matters not that no witness testifies that the bank-stock was so paid for. That is a conclusion of fact, and it is sufficient that there is evidence from which it has been inferred, as a jury might have inferred it.

It is contended that it was *ultra vires* of the plaintiff corporation to hold stock in a national bank. But this the defendant cannot be heard to urge. The proposition, indeed, is not tenable that the State alone, and not private parties to a suit, can complain, where a corporation sues or defends on grounds inconsistent with its charter powers. Questions

of public policy constantly intervene, and it is inconsistent with well-settled principles for courts to lend their aid in disregard of such questions. In a case, for instance, where the enforcement of a contract would violate the public policy of a State, it is not easy to see how a court can actively assist to violate that policy by enforcing such a contract, any more than it would interfere to violate enacted laws which might give to that policy a more precise expression. The rule sounder in principle and sustained by the greatest weight of authority, both American and English, is that where a corporation departs from its proper powers, either by exceeding them or by refusing to exercise such as are essential to the grant as a whole, and the departure involves questions of State policy or matters which affect the rights of the public, there, independently of any direct proceeding upon the part of the State for violation of charter, the courts will refuse to countenance or lend their aid to actions or defences which are based upon such departures. Since it cannot be denied that many contracts involving material departures from the charter powers are void, the difficulty remains of drawing any distinguishing line between the cases, grounded on a greater or less infusion of the element of public policy. The inconsistency involved in enforcing *ultra vires* contracts is the same whether the violation of public policy is great or slight. So, the mischief and the danger to the public which arise from the departure by corporations from their legitimte spheres of operation can never be guarded against by mere proceedings upon the part of the State, but demand adherence to the rule above given. The case of *Matthews* v. *Skinker*, 98 U. S. 621, cited by the plaintiff as reversing the same case, 62 Mo. 329, so far as it can be considered as militating against the position now taken, is not conclusive authority ; here since, though the Supreme Court of the United States reversed the judgment in the particular case, that court cannot lay

down a binding rule for the courts of this State in a matter not necessarily involving a Federal question. The general rule does not depend upon that case, but upon others which it follows, and these are sustained by the soundest reasoning and by the great weight of authority. *Blair* v. *Insurance Co.*, 10 Mo. 560; *Christian University* v. *Jordan*, 29 Mo. 68; *Pacific R. Co.* v. *Seeley*, 45 Mo. 212; *West End R. Co.* v. *Dameron*, 4 Mo. App. 414. The question is thoroughly discussed and the authorities are reviewed in *Bissell* v. *Railroad Companies*, 22 N. Y. 258, and *Miners' Ditch Co.* v. *Zellerbach*, 37 Cal. 543. There are, of course, exceptions to the general rule : as where the rights of holders of negotiable paper are involved, and where the facts make imperative the application of the principle of estoppel. So, where a corporation which has power to hold land has bought real estate under an executed conveyance, the courts will not collaterally consider the question whether there was a violation of charter involved in accepting the conveyance of the particular real estate described in the deed. *Chambers* v. *St. Louis*, 29 Mo. 576; *Shewalter* v. *Pirner*, 55 Mo. 218; *Land* v. *Coffman*, 50 Mo. 243. The principle of these last cases is so far applicable here that, on the issues raised, it would be foreign for this court to inquire, in the equity case, whether the company, which under its charter might hold lands, had the power to hold these particular lands. The bill in the equity case asks, it is true, for affirmative relief and to have the title to the lands vested in the plaintiff company; but the defendant neither pleads the defence of *ultra vires*, nor facts on which that defence rests. If issue had been made, other facts might have been brought out having an important bearing on this question. Accordingly, even in the equity case it cannot be assumed that the plaintiff had no right to hold the real estate, while in the present case the defendant, a wrong-doer, sued for conversion, has no standing to

question the plaintiff's title. In both cases it was by the act of the defendant and his associates, the officers and stockholders of the company, that the corporation acquired the property, the power to hold which the defendant now questions with a view of retaining such property or its proceeds.

Much space in the defendant's briefs is occupied with arguments as to questions that are not before this court. Thus, the motion in arrest does not here properly bring up the sufficiency of the petition, since the answer is not before the court, and this may have cured the defects, if any existed, of the petition, as the amended answer appears to do. A careful perusal of this voluminous record fails to disclose any case in which, against objection of the defendant, entries in the books and records of the plaintiff were admitted in evidence. Again, this court has nothing to do with the defence grounded, in reference to the present suit, on the contract of February 16, 1873. The referee's report was filed on May 20, 1878. On October 11, 1878, the day on which the defendant's exceptions to the report were overruled, an amended answer was filed *nunc pro tunc* as of June 17, 1878, and this is the only answer which appears of record. It is hardly necessary to say we will not try a new case here, or consider defences which, as appears from the referee's report, were not passed upon by him. Why these matters of defence, contained exclusively, it would appear, in an answer filed on the day on which the court below overruled the exceptions to the report, are now presented to this court, it is not easy to understand.

The judgment is affirmed. All the judges concur.