WILLIAM S. RELFE, SUPERINTENDENT OF INSURANCE, *v.* COLUMBIA LIFE INSURANCE COMPANY, L. E. ALEXANDER, RECEIVER, Appellant; THEODORE W. HEMAN, RECEIVER OF THE ATLAS, THE MISSOURI, AND THE DE SOTO LIFE INSURANCE COMPANIES, Intervening Petitioner, Respondent; SILAS BENT, RECEIVER OF THE ST. LOUIS MUTUAL LIFE INSURANCE COMPANY, Respondent.

### March 29, 1881.

1. The securities deposited with the insurance department by an insurance company are a special trust-fund for the benefit of the policy-holders of that particular company.

2. A transfer of all the assets of the company to a reinsuring company will not transfer this fund discharged of the trust so that the reinsuring company may apply it to the payment of its general creditors.

3. Where the reinsuring company is improperly permitted to withdraw such deposit and replace it with its own secured notes, these notes and security become affected with the trust attaching to the original withdrawn deposit.

4. The doctrine of *ultra vires* cannot be invoked to deprive policy-holders not assenting to such assignment and reinsurance of their right to subject such notes to the trust attaching to the original deposit.

5. A payment of premiums by policy-holders in a reinsured to a reinsuring company does not, in the absence of evidence of an intention to make a new contract, work a novation, but such payment keeps the policy in force against the reinsured company.

6. That the reinsuring company pays polices of the reinsured company, does

not, as against non-assenting policy-holders, create an equitable claim in favor of the former to the special deposit made by the latter.

7. The security of this special trust-fund is not confined to such policy-holders as obtain judgment against the company before the appointment of a receiver.

8. *Res adjudicata.* Case adjudged.

APPEAL from the St. Louis Circuit Court, THAYER, J. *Affirmed.*

JOHN D. POPE, for the appellant: Original policy-holders of the De Soto, Atlas, Missouri, and St. Louis Mutual, can claim the benefit of a deposit made by the Columbia, only by ratifying the transfer made by their companies to the Columbia, which ratification operates as a novation of the contract of insurance, and makes those who so ratify policy-holders of the Columbia. — *In re Times Life, etc., Co.,* 5 Ch. App. 396; *Spencer's Case,* 6 Ch. App. 371; *Miller's Case,* 3 Reporter, 302; *Henning* v. *United States Ins. Co.,* 47 Mo. 425; *s. c.* 2 Dill. 26. But such ratification and novation of the contract of insurance severs the connection between the policy-holder and the old company, and the receiver of the old company cannot afterwards represent him. No suit in his interest can be brought by the receiver of the old company after he has gone into the new, especially when he is claiming the benefit of a deposit made by the new company. The trust attaching to the deposit was temporary and provisional; it could be reached only by motion after a return of *nulla bona* on an execution; the special trust was therefore limited to such policy liabilities as were reduced to judgment. — *Bank* v. *Colby,* 21 Wall. 609; *Mitchell* v. *St. Maxent,* 4 Wall. 237. That the special deposit made by an insurance company is a trust-fund does not disable it to sell its interest in that fund, and the receiver takes simply the company's title. — High on Rec., sect. 315; Field on Corp., sects. 419, 420. But neither of the foregoing propositions is necessary to appellant's case. There is a broader, and perhaps a more satisfactory,

view of this whole matter. All the assets of the old companies, including securities on deposit, had been sold and transferred to the Columbia years before the deed of trust was made. The execution of the deed of trust was but a step taken in pursuance of these transfers — merely a method of using part of the transferred property; and even though the contracts providing for these transfers were originally *ultra vires*, they had been so fully executed, and so long acquiesced in, that they should now be held in all respects unimpeachable. — Field on Corp., sects. 266, 273, and cases cited; *Bissell* v. *Railroad Co.*, 22 N. Y. 258; *Curtis* v. *Leavitt*, 15 N. Y. 9; *Parish* v. *Wheeler*, 22 N. Y. 494; *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 68; *Thompson* v. *Lambert*, 44 Iowa, 239; *Hayes* v. *Galena Gas-Light Co.*, 29 Ohio St. 338; *Township* v. *Talcott*, 19 Wall. 678, 679, and cases cited; *Railway Co.* v. *McCarthy*, 96 U. S. 267; Sedgw. on Stat. & Const. Law, 73, and cases cited; *Anglo-Austrian Assur. Co.* v. *British Co.*, 3 Gif. 521; *Railroad Co.* v. *Howard*, 7 Wall. 393; *De Groff* v. *American, etc., Co.*, 21 N. Y. 127; *Union Water Co.* v. *Murphy Co.*, 22 Cal. 620. Neither is the next preceding proposition essential. There is a still stronger ground on which to rest this appeal. To enforce the deed of trust against the policyholders of the Columbia, rather than in their favor, is not only to reverse its provisions and give it effect directly in opposition to its terms, but it is to rescind each of the reinsurance contracts in part, without rescinding them *in toto*. — *Jarrett* v. *Morton*, 44 Mo. 275; *Melton* v. *Smith*, 65 Mo. 324; *Miner* v. *Bradley*, 22 Pick. 457; *Wolf* v. *Dectzsch*, 75 Ill. 205–210; *Walcott* v. *Heath*, 78 Ill. 433; *Berger* v. *Railroad Co.*, 32 Iowa, 101; *Spencer* v. *St. Clair*, 57 N. H. 9. If the deposits were a fixed and permanent trust-fund for policy-holders, then each policyholder had a certain interest in it which bore the same ratio to the whole deposit as the value of his policy bore to the aggregate value of all the policies. This interest each pol-

icy-holder could dispose of as he saw fit; certainly he could do so upon the dissolution of the company, or upon its final retirement from business, which is, in this respect, the same thing. He could assent to a transfer of *all* the assets and risks to another company, and could make himself a policy-holder in the new company by simply assenting to the amalgamation. — *Insurance Co.* v. *Stratham,* 93 U. S. 34, 35. There is an additional defence to the claim of the De Soto. The deposit of that company was never transferred to the Columbia, nor was any part of it ever used by the latter company. It was withdrawn and went into the hands of certain of its officers, residing in St. Louis, who still have it in possession, subject to all the trusts that ever attached to it. The Columbia could not be liable at all for that fund except on the ground that it had been lost by reason of its unlawful interference. But the Columbia has never interfered. — Story's Eq. Jur., sect. 1097; *Lanahan* v. *Latrobe,* 7 Md. 268; *Sanger* v. *Wood,* 3 Johns. Ch. 416; *The People* v. *Kelly,* 1 Abb. Pr. (N. S.) 432; *Adlum* v. *Yard,* 1 Rawle, 163; *Gutzweiler* v. *Lakenan,* 23 Mo. 168; *Burroughs* v. *Alter,* 7 Mo. 424. *Res adjudicata.* — *Offut* v. *John,* 8 Mo. 120; *Poorman* v. *Mitchell,* 48 Mo. 45; *Railroad Co.* v. *Traube,* 59 Mo. 355; *Edgell* v. *Sigerson,* 26 Mo. 583; *Cromwell* v. *County,* 94 U. S. 351; *Lumber Co.* v. *Buchtel,* 101 U. S. 683; *Case* v. *Beauregard,* 101 U. S. 688.

B. H. DYE, for the intervenor; LOUIS GOTTSCHALK, ALEX. MARTIN, CARR & REYNOLDS, of counsel: The one hundred thousand dollar fund deposited with the superintendent of the insurance department of Missouri by a life-insurance company, for the security of its policy-holders, in compliance with the requirements of the statute, is a trust-fund. — Wag. Stats. 745, chap. 76, art. 2, sect. 21. See also sects. 19, 20, 23, 24, and 33 and 34 of same chap. and art.; 2 Story's Eq. Jur., sect. 964; 1 Perry on Tr. (2d ed.), sect. 82, and numerous cases cited; *Rug-*

*gles* v. *Chapman*, 59 N. Y. 163; *s. c.* 64 N. Y. 551; *Pennebaker* v. *Tomlinson*, 1 Tenn. Ch. 594. Being a trust-fund, it cannot be diverted from the purposes for which it was created, without the consent of the beneficiaries in such trust, who, in this instance, were the policy-holders. — 1 Perry on Tr. (2d ed.), sect. 82, and numerous cases cited. The beneficiaries having executed no instrument, the trust is not released, and the fact that a policy-holder in the reinsured company paid premiums to the reinsuring company on a policy issued by the reinsured company would not constitute a novation. — *Smith* v. *Insurance Co.*, 2 Tenn. Ch. 727; *In re Manchester, etc., Ass.*, L. R. 5 Ch. App. 640; Sansum's Dig. Ins. Cas. 840, 841, pgh. 3. The notes and deed of trust are valid. Having the title to the real estate described in the deed of trust, the conveyance is *prima facie* valid. — *Aurora* v. *Paddock*, 80 Ill. 263; *Badger* v. *Batavia*, 70 Ill. 302. The St. Louis Life (now Columbia Life) having, at its own motion, made its own notes and secured the same by deed of trust, and having deposited the same with the superintendent of the insurance department in lieu of the securities constituting the original trust deposit, and to the credit and in the name of the companies making such original deposit, and for the security of the original beneficiaries of such original deposit; and such change and substitution having been accepted by the superintendent, and the withdrawn securities converted by appellant to its own use, whatever rights the beneficiaries of the original securities would have if they remained intact, they must be held to have as against the securities forming the present deposit, to wit, the forty $10,000 notes and deed of trust; and the appellant cannot be heard at this time to allege the invalidity of its own acts, whereby it was enabled to appropriate the securities constituting the original deposit. — *Darst* v. *Gale*, 83 Ill. 136; *Natchez* v. *Mallery*, 54 Miss. 499; *Thompson* v. *Lambert*, 44 Iowa, 239; *Bradley* v. *Ballard*,

55 Ill. 417 *et seq.; Railway Co.* v. *McCarthy*, 96 U. S. 267 ; *West* v. *Madison County Agr. Board*, 82 Ill. 205 ; *Germantown Ins. Co.* v. *Dhein*, 43 Wis. 420 ; *Oil Creek, etc., R. Co.* v. *Pennsylvania Transp. Co.*, 83 Pa. St. 160 ; *Mathews* v. *National Bank*, 98 U. S. 621 ; *Whitney Arms Co.* v. *Barlow*, 38 N. Y. Superior Ct. 554 ; *s. c.* 63 N. Y. 68 ; *Covington* v. *Bridge Co.*, 10 Bush, 69. Payment of premiums to the reinsurer does not work a novation. — *The People* v. *Security Co.*, 78 N. Y. 114. A contract of reinsurance and an assignment of the assets of the reinsured company to the reinsuring company are void as against dissenting policy-holders. — *Barden* v. *Insurance Co.*, 3 Mo. App. 248 ; *Relfe* v. *Insurance Co.*, 5 Mo. App. 173.

LOUIS GOTTSCHALK, of counsel for the Atlas Life Insurance Company : The securities on deposit are a trust-fund, and cannot be diverted and divided so as to become a common fund, in which the policy-holders of other companies can share and have the same rights as the policy-holders of the Atlas.—*Price* v. *Insurance Co.*, 3 Mo. App. 262 ; *Barden* v. *Insurance Co.*, 3 Mo. App. 248 ; *Relfe* v. *Insurance Co.*, 5 Mo. App. 173. Nor was there any novation by the payment of premiums. — *Smith* v. *Insurance Co.*, 3 Tenn. Ch. 727 ; *In re Society*, 5 Ch. App. 118 ; 3 Mo. App. 271.

JOHN M. GLOVER, for Silas Bent : The Mound City, having secured the assent of the insurance department to a withdrawal of the original deposit of the St. Louis Mutual and converted the same to its own use, is estopped to deny the validity of the notes substituted, and is estopped from saying the pledge is invalid because the property pledged is not of the precise kind specified by statute. "The objection that an act was ' *ultra vires* ' imports, not that the corporation could not, and did not in fact make the unauthorized contract, but that it ought not to have made it, and therefore rests upon the violation of trust or duty towards the shareholder, and hence it is not to be entertained where its allowance will do a greater wrong to innocent third

parties." — *Medical College* v. *Zeigler*, — Ohio St. 52 ; *Bradley* v. *Ballard*, 55 Ill. 417. While courts are inclined to maintain with vigor the limitations of corporate action, whenever it is a question restraining corporations in advance from passing beyond the boundaries of their charters, they are equally inclined, on the other hand, to enforce against them contracts, though *ultra vires*, of which they have received the benefits. — See also Field on Corp., sects. 266, 273, and cases cited ; *Bissell* v. *Railroad Co.*, 22 N. Y. 258 ; *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 68 ; *Curtis* v. *Leavitt*, 15 N. Y. 9 ; *Parish* v. *Wheeler*, 22 N. Y. 494 ; *Thompson* v. *Lambert*, 44 Iowa, 239 ; *Hayes* v. *Galena Gas-Light Co.*, 29 Ohio St. 338 ; *Township* v. *Talcott*, 19 Wall. 678, 679, and cases cited ; *Railway Co.* v. *McCarthy*, 96 U. S. 267 ; Sedgw. on Stat. & Const. Law, 73, and cases cited ; *Anglo-Austrian Assur. Co.* v. *British Co.*, 3 Gif. 521 ; *Railroad Co.* v. *Howard*, 7 Wall. 393 ; *De Groft* v. *American, etc., Co.*, 21 N. Y. 127 ; *Union Water Co.* v. *Murphy Co.*, 22 Cal. 620.

Thos. T. Gantt, for Silas Bent.

Bakewell, J., delivered the opinion of the court.

The Mound City Life Insurance Company, on February 19, 1874, changed its name to the " St. Louis Life Insurance Company," and on January 28, 1876, again changed its name to the " Columbia Life Insurance Company." The name by which it is called is unimportant ; the company remained the same. For the purposes of this opinion the company will be spoken of throughout by the name which it last assumed, and which it now holds.

In the cause whose title is set out above, the Circuit Court is administering, through its receiver, the assets of the Columbia Life Insurance Company. The assets of the Atlas, Missouri, and De Soto Life Insurance Companies are also being administered in the same court by its receiver, Theodore W. Heman. Heman was directed by the court to

file intervening petitions in the original cause as receiver of the three last-named companies. The object of these petitions is to subject to the payment of certain notes made by the Columbia Life a lot of ground with the improvements at the corner of Sixth and Locust Streets, St. Louis, formerly owned by the Columbia Life. The sheriff, who had been substituted as trustee of the deed of trust sought to be enforced, was made defendant, as also was the collector of St. Louis, because there were unpaid taxes that were a lien upon the property. Another defendant was Silas Bent, receiver of the St. Louis Mutual Life Insurance Company. He appeared and admitted the allegations of the intervening petition, and asked that the prayer of the petition be granted. The intervenor then filed motions asking the court to sell the property described in the deed of trust, and that the proceeds be brought into court. The property was accordingly sold for $284,500, and this sum, less the amount paid for taxes, is now awaiting the determination of the present controversy. The Circuit Court made a decree adjudicating the rights of those claiming the funds, and from this decree the receiver of the Columbia Life Insurance Company appeals.

The "Act for the Incorporation and Regulation of Life Assurance Companies" (Acts 1869, p. 33; Wag. Stats. 745, sects. 21, 22) provides (sects. 20, 21) that " No company organized under this act, or reorganized under the sixteenth section thereof, shall commence or carry on business until such company has deposited with the superintendent of the insurance department, for the security of its policy-holders, the sum of one hundred thousand dollars, in stocks, or in notes or bonds secured by mortgages or deeds of trust of the description mentioned in the nineteenth section of this act; such stocks to consist only of bonds or treasury notes of the United States, or bonds of the State of Missouri, and in all cases to be, or to be made, equal to stock producing six per cent per annum, and not to be received at a rate above

their par-value, nor above their current market value. No existing corporation organized under any general law of this State, and transacting business of the character designated in the first section of this act, shall continue to transact such business unless it shall, within six months after the passage of this act, deposit with the superintendent of the insurance department, for the security of its policy-holders, securities to the amount and of the same value and description required by the preceding section to be deposited by similar corporations formed under this act.''

In compliance with this act the Atlas Mutual Life Insurance Company, on July 1, 1869, deposited $100,000. This deposit remained in the department, and was there on April 24, 1872, when the Atlas, having a large number of policies in force, entered into a contract of reinsurance with the Columbia Life Insurance Company, and sold all its business and assets to that company, the Columbia Life agreeing to assume and discharge all the liabilities of the Atlas. The Atlas at once ceased to do business, turned over to the Columbia Life all the assets under its control, and desired to transfer the deposit of $100,000, but the superintendent of insurance would not permit the transfer; the superintendent had at that date prepared blank forms for orders to withdraw from the department securities deposited under the act for the benefit of policy-holders, and also forms for proposals to deposit such securities, and had made a rule, which from that time was adhered to, that these forms should be signed and the formalities indicated complied with, in every case of withdrawing or depositing securities. In accordance with these rules and blank forms on the deposit of securities, the company desiring to deposit furnished a list in writing of the securities, and appointed in writing an agent to accomplish the deposit, who was obliged to certify in writing that, as agent, he was present at the vault of the Safe Deposit Company in St. Louis; that, with his assistance, at a date

named, the box containing the deposit of the company in question was unlocked and opened by the deputy superintendent of the insurance department; that the agent witnessed the deposit therein of the securities described; that the agent remained present and attentive whilst the box was relocked, and that the securities at the date of signing the certificate are on deposit in that box. The formalities prescribed for the withdrawal of securities require a description of the securities and a request for their withdrawal, and the appointment of an agent of the company to accomplish the withdrawal, all in writing and signed by the president and secretary of the company desiring to withdraw, and also a written certificate of the agent so appointed, that he was present when the deputy superintendent of insurance opened the box; that he attentively observed all that took place until the box was relocked,; that he received the securities withdrawn, and that nothing else was withdrawn.

Section 23 of the insurance law (Wag. Stats. 745) provides that the superintendent of insurance shall require each company to keep up its deposits to full value ; that he shall, upon the receipt of the securities, at once make a special deposit of the same, and that they shall remain as security of the policy-holders so long as the company depositing shall remain solvent ; but it further provides that, so long as such company is solvent, the superintendent shall permit it to collect the interest and dividends on its securities, and, from time to time, to withdraw any such securities, on depositing in lieu thereof securities of the same value and kind mentioned in the section concerning these deposits ; such withdrawal not to be made without written orders of the president and secretary of the company.

After the execution of the reinsurance contract between the Columbia and the Atlas, and the refusal of the department to permit the transfer of the deposits, the president and secretary of the Atlas signed and sealed the blank forms

required by the department, and delivered the same to the Columbia. This was necessary to enable the Columbia to collect any maturing interest and dividends on these securities. There is no direct evidence as to the purpose for which it was done. But on March 5, 1875, the secretary of the Atlas demanded of the Columbia the return of all blank orders for the transfer of deposits, and forbade their use by the Columbia, and notified the superintendent of insurance of this. No change affecting their deposits occurred from February 14th up to August 9th, excepting one, and that was immaterial, and effected by the president of the Atlas himself.

On July 31, 1875, the Columbia owned and occupied a building on the northwest corner of Sixth and Locust Streets, St. Louis, called the Insurance Building. On that day, in pursuance of a resolution of the executive committee authorizing the vice-president of the Columbia to place a mortgage on this property for $400,000 for the purpose of covering deposits in the insurance department, a deed of trust in the nature of a mortgage was executed by the proper officer of the Columbia, conveying this property to a trustee to secure forty notes of $10,000 each, dated July 31, 1875, payable on demand to the order of the vice-president, and signed by the vice-president, A. M. Britton. The notes bear interest at six per cent, and were indorsed by Britton to the order of the superintendent of insurance.

On August 9, 1875, the superintendent of insurance permitted the Columbia, by the use of the blanks of the Atlas before referred to, to withdraw the securities of the Atlas on deposit according to law, for the purpose of using the same, and to deposit in place of them ten of these notes secured upon this building, which, as has been said, has been since sold under this mortgage for less than three-fourths of this encumbrance.

On January 19, 1878, the Atlas was dissolved and a receiver appointed by the Circuit Court. On October 17,

1877, the Columbia was dissolved by the Circuit Court, a temporary receiver having been previously appointed.

These notes have come into the hands of Heman, the receiver of the Atlas, since its dissolution, and the receiver insists in this proceeding that the deposit made by the reinsured company, the Atlas, became a trust-fund that should be applied, in the first instance, to the satisfaction of the claims of the policy-holders of the company making the original deposit, and that the contract of reinsurance has not changed the character of the trust.    This is the contention of all the four reinsured companies represented in this proceeding by Heman and Bent, as receivers.    And so the court held.    The intervening receivers contend that the policy-holders have a special lien upon the deposit in the form which it has now assumed.    The receiver of the Columbia holds, on the other hand, that, by virtue of the reinsurance contracts, the Columbia has become responsible for the debts of all the four companies, but that these debts are to be paid without priority out of the assets of the Columbia, and that these deposits are part of the assets of the Columbia.

The facts as to transfer of assets, agreement to discharge liabilities, deposit and change of securities, are, in the case of the Mound City and Missouri Mutual, substantially the same as in the case of the Atlas.    Both of these companies, also, at the date of their transfer of assets to the Columbia, had a large number of policies outstanding, and ceased to transact business from the date of transfer of assets to the Columbia.    The De Soto Mutual Life Insurance Company complied with the law of the State, and deposited with the superintendent of insurance, on June 26, 1869, securities worth $100,000; it continued to transact business until July, 1871, when it had a large number of policies in force, at which date it agreed with the Republic Insurance Company to transfer to that company all its assets, not including the deposit of $100,000, in considera-

tion that the Republic Insurance Company would assume and discharge all the liabilities of the De Soto. The assets were delivered, and the De Soto ceased to do new business. On February 12, 1874, all the policies of the De Soto except fifty-four, the liability on which was $20,000, had been paid, forfeited, or cancelled. The Republic and De Soto then agreed that the Republic should be released from further performance of its agreement as to the fifty-four policies, and the De Soto agreed with the Columbia that the Columbia would, in consideration of $20,000 paid by the De Soto, assume and discharge the fifty-four policies outstanding on the books of the De Soto, the Columbia to withdraw from the insurance department the $100,000 of securities then on deposit for the benefit of De Soto policy-holders, and substitute to the credit of the De Soto and for the benefit of its policy-holders, $100,000 of other securities ; and on such withdrawal and substitution, return and deliver to a committee of directors of the De Soto the $100,000 thus withdrawn. After the execution of this contract, the Columbia placed in the hands of the officers of the De Soto securities to the amount of $100,000, which that company deposited with the insurance department to its own credit and for the benefit of its policy-holders, at the same time withdrawing the fund before deposited to its credit, which it delivered to the committee provided for in the agreement. After the execution of this agreement, and in accordance with its provisions that the capital stock of the De Soto should be transferred to such persons as the Columbia should designate, the old directors of the De Soto, at a meeting on February 28, 1874, resigned, or were declared ineligible, and the entire board of directors of the De Soto became composed of directors of the Columbia, and Bogy, of the Columbia directory, was elected by this new directory president of the De Soto, and was recognized as such by the Columbia and by the insurance department. After this date the De Soto transacted no business except

in relation to the fund deposited with the insurance department for the security of its policy-holders.

No notice was given to their policy-holders of the intention to reinsure, by any of the four companies. Large numbers of the policy-holders of the Atlas, Missouri, De Soto, and St. Louis Mutual retained their policies, refused to surrender them, and presented them as claims before the referees appointed when their companies were dissolved.

Then, at the date of the contracts of reinsurance, each of the four reinsuring companies had deposited in the insurance department securities worth $100,000, according to law; these were all withdrawn about August 1, 1875, by the Columbia Life, to which company the assets of the reinsuring companies had been transferred, and the notes secured by deed of trust on the Insurance Building were deposited in lieu of these securities — notes to the amount of $100,000 being deposited in the name of each reinsured company. These notes are in the hands of the receivers of the reinsured companies, and it became necessary in this proceeding to determine whether the proceeds realized from the sale ought to be distributed *pro rata* among the policy-holders and general creditors of the Columbia Life, as being general assets of that company, all policy-holders of the five companies to share alike, or whether the policy-holders of the four reinsured companies who have established claims against the assets of their companies are entitled to priority out of the fund. The Columbia is confessedly responsible for all debts of the four companies which have sold out to that corporation; but the receivers of the four reinsured companies claim that the deposit, and the proceeds of the notes which replaced the deposit, so far as these proceeds will go, ought to be applied first to payment of policy-holders who retained their policies in the original companies. It appeared that claims of policy-holders who had not surrendered to the reinsuring company had been established before the referees appointed to pass upon claims against

the companies dissolved, and had been allowed by the court. In the case of the Atlas, these proved demands were about $60,000 ; in the case of the Missouri Mutual, about $75,000 ; in the case of the De Soto, about $6,000 ; and in the case of the St. Louis Mutual, more than $100,000. Claims for policies in these companies not yet passed upon by the court still exist, but to what amount does not appear.

The Circuit Court held that the proceeds of these notes ought to be treated as a special fund for the benefit of the policy-holders of the companies by whom the deposits, for which the notes were substituted, were made ; that the receiver of the Columbia ought to retain the share of these policy-holders who have retained their policies against the original companies and proved their demands against the Columbia, and distribute this to the parties in interest ; that the portion belonging to the policy-holders of the re-insured companies who have proved their claims only against these companies, ought to be paid to the receivers of these companies respectively ; and that, as the deposits involved in the controversy were made for a special purpose only, when the claims of the policy-holders who have had their claims allowed are discharged, the surplus of each deposit will remain the property of the Columbia and be retained by the receiver of that company. If the deposit in behalf of either company is insufficient to pay policy-holders of that company, the fund to be divided *pro rata*, and a portion of the fund to be retained by the receiver of the Columbia to pay policy-holders proving against that company, and a portion paid over to the receiver of the company making the deposit.

A decree was rendered accordingly, from which the receiver of the Columbia appeals.

That the $100,000 deposited by a life-insurance company with the superintendent of the insurance department, under the statutory provisions above cited, is a trust-fund for the benefit of the policy-holders of the company making such

deposit, seems to be clear. Section 21 speaks of the deposit as made "for the security" of the policy-holders of the company making the deposit. In section 34 of the act, the deposit to be made by foreign companies spoken of in section 33 as being "for the security of the policy-holders," is referred to as being "held in trust and on deposit for the benefit of the policy-holders of such company." There can be no mistake as to the legislative intent. There are words sufficient to raise a trust; there is a definite subject, and a certain ascertained object, of the trust. We do not see what is wanting to give an equitable interest in this special deposit to the policy-holders of the company making it. The law seems to separate the fund from the general assets of the corporation making the deposit, and to set apart this fund specially for the security of the policy-holders of that company. *Robbins* v. *Embry*, 1 Smed. & M. Ch. 260.

If the original securities deposited were affected with a special trust, we do not see how it can be seriously contended that the notes which, by means that we need not characterize, were made to take the place of this fund, were, by the fact of this change, discharged of this trust and merged into the general assets of the company. These notes, after their deposit, were evidently held precisely as the funds that they were intended to replace were held, and upon the same trust.

It is said that it was *ultra vires* of the Columbia Life to make this deed of trust, and that there is no provision of law for the deposit by a company of its own obligations; that this deed of trust recites that it was to secure the policy-holders of the Columbia, and that the statute recognizes no deposit with the department except that made for the security of the policy-holders depositing. The plea of *ultra vires* ought not, in this case, to be allowed for the purpose of accomplishing a wrong. The notes and deed of trust were made that they might be substituted for the

$100,000 of securities, and they were substituted for those securities with the consent of the superintendent of insurance, and by the abuse of the forms of the department executed by the officers of the companies that had made the deposits. Securities which turned out to be worth only $280,000, were then put in the place of the securities which the law required, and which were worth $400,000 ; the funds then withdrawn were taken by the Columbia and converted to its own use. The Columbia is certainly not in a position to restore these assets thus abstracted, or their equivalent. It does not offer to do so. It ought not now be heard to say that the notes and mortgage by which it obtained these valuable assets are bad, as being instruments it had no power to make. *St. Louis Stoneware Co.* v. *Partridge*, 8 Mo. App. 217 ; *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 65.

If the securities deposited with the insurance department are by law a special deposit for the benefit of the policy-holders of the company originally making the deposit, this is by virtue of a public act of which all parties dealing with these companies have notice. A transfer of all the assets of the reinsured companies to the Columbia Life could not therefore destroy the character of this fund, or transfer it to the Columbia Life discharged of any trust or lien impressed upon it by law to be held as part of its general assets, and for its general creditors. The companies could only pass such interest in their assets as they themselves had ; and the Columbia Life took subject to all claims of third parties of which it had notice. It could not apply the deposit fund of the Atlas to the payment of creditors of the De Soto ; nor can it apply the special deposit of any one of these companies to the general purposes of its own business without a manifest violation of law. There is nothing in the terms of any one of the contracts of reinsurance from which it can be gathered that either party to any one of these contracts contemplated a transfer of the special funds discharged of the trust impressed upon it by law. The fund in each case was kept separate after the

transfer. Both the contracting parties and the superintendent of insurance still recognized the fund as retaining its original character, and all dealt with it as if the reinsured companies were each transacting a separate business. The fund was not regarded by anybody concerned with it as a general fund, but remained after the contracts of reinsurance and transfer, as it had originally been, a separate deposit of $100,000 in each case; and no effort was made by the Columbia to withdraw the deposit, except for the purpose of substituting for it another to be held upon like trusts, — that is, to be held, not for the benefit of policyholders of the Columbia, which had its own special deposit of $100,000 as required by law, but for the benefit of the Atlas, De Soto, St. Louis Mutual, and Missouri Mutual.

There is nothing in the claim made by the receivers of the reinsured companies that is at all inconsistent with the transfer which these companies had made of their assets to the Columbia, or that involves a rescission of the contracts by which that transfer was made.

The policy-holders of each reinsured company could not, without their consent, be divested of their equitable right to have this fund held and kept up as a security for the payment of their policies. They were not consulted about the matter; and whilst some of them subsequently surrendered their policies and took out new policies in the reinsuring company, a large number of the original policyholders retained their existing policies. These paid premiums to the Columbia after the reinsurance, and some of them have proved claims against the Columbia, but we cannot see how such facts can be construed into a waiver of the claims of these policy-holders against the special deposit made and kept up as security for their policies. The policy-holder is entitled to the securities which the statute gives him, on the faith of which he took out his policy. He still holds the original insurer, and may sue on the original promise, and assert his claims to the fund that the original

promissor had deposited, and which the law set apart and required the appointed custodian of it to keep it for his benefit. The insured being no parties to, and without notice of the understanding between the reinsured companies and the Columbia by which those companies endeavored, so far as that was possible, to substitute the reinsuring company for those that it reinsured, and having never assented to this agreement, could not, without their consent, be turned over to the reinsuring company in such a way as to lose a right to securities in which they had an equitable interest, and which the superintendent of insurance could not permit to be withdrawn from his custody and turned over to become general assets of the reinsuring company without making himself criminally liable.    Wag. Stats. 745, sect. 23.

The policy-holders in paying premiums to the reinsuring company might well rely upon the securities carefully set apart by law for their benefit, and on the faith of the existence of which they took out their policies, and in which they could not lose their interest without their consent. The policy-holder, if he wished to keep alive his policy, was bound to pay his premiums, and there was no one to whom he could pay them except the officer of the reinsuring company.    He was not bound to tender his premium to the officers of the reinsured company, and to demand the surrender-value of his policy.    He had a right to keep his policy alive, and the Columbia was bound by its contract of reinsurance to receive his premium, and to pay the policy, if it became due by death, out of its general assets, having received a valuable consideration for so doing.    The policy-holder could forfeit no right by paying his premium to the person designated to receive it by the company issuing his policy.    The payment of premiums to the reinsuring company on a policy issued by the reinsured company could not constitute a novation.    Strict proof will be required before it is held that a creditor of a company under a special contract has accepted the liability of another com-

pany with which the first was amalgamated. *In re Manchester, etc., Ass.,* L. R. 5 Ch. App. 640. The policy-holder continued to pay premiums in the only office where he could pay them. He paid where he was told by his insurance company. His policy would have been dropped had he refused to pay them there. He is not to be held so acquainted with the arrangement between the Columbia and his own company that he can no longer conceive himself safely a creditor of that company of which he was originally insured and whose policy he holds.

In England (*In re Fam. End. Soc.,* L. R. 5 Ch. 118), company A., a life-insurance company, granted an annuity to the petitioner, charged upon the assets of the company. Afterwards the company was dissolved by resolution of the shareholders, and its assets transferred to company B. By the deed of transfer it was agreed that all the liabilities of company A. should be paid out of the assets of company B., and that company B. should indemnify company A. against them. It was also provided that both companies should use their best endeavors to induce the policy-holders and grantees of company A. to take in exchange policies and grants in company B. The petitioner received his annuity under his grant from company A. before the amalgamation, and afterwards from company B., and gave receipts in the name of company B. until that company stopped payment, but his grant was never exchanged for a grant of company B. It was held that he had not accepted company B. as his debtor in place of company A.

In America, also, it is held that the payment of premiums by policy-holders in a reinsured to a reinsuring company, does not work a novation, in the absence of any evidence of a plainly expressed intention to make a new contract. The principles which govern the novations of other contracts apply to insurance. *Smith* v. *St. Louis Mutual,* 2 Tenn. Ch. 727, 742. *Novatio non presumitur* is a maxim of the civil law, from which we take the term. What substitution

of a new contract, or of a new debtor, is shown in this case? As was said in *Price* v. *Insurance Company*, 3 Mo. App. 271, in spite of the contract of reinsurance the policy-holder has a right to insist upon his legal rights. And he has, as much as before, his remedy against his own insurer, and of course against those assets of his own insurer which the law specially sets apart for his security.

The payment of premiums to the reinsuring company kept the policies in force against the reinsured company, and increased the value of the policy and its charge against the fund deposited with the superintendent of insurance. But this seems to be no reason why the Columbia should have a claim upon the special fund. No attempt is made to recover these premiums from the Columbia, which it received and retains. It received its consideration for the reinsurance from the reinsured companies. Nor does the fact that the reinsuring company paid large numbers of policies of the reinsured companies create an equitable claim in favor of the Columbia on the department fund. It had contracted to pay these policies, and, as consideration for doing so, it received all the assets of the companies which they were capable of transferring. Had it paid all the policies, the fund would be discharged of the trust — there being no policy-holder for whose benefit it could be held — and the Columbia would be entitled to those assets along with the rest. The policies paid by the Columbia reduced *pro tanto* the amount with which the deposit fund was charged, and it had a right to the residue of each deposit as soon as all policy-holders for whose benefit the deposit was made were paid. The policies when paid by the reinsuring company are paid, not purchased; they are dead; and there can be no right in the Columbia to be subrogated to rights of such policy-holders to that fund, for these rights no longer exist. And if there were such rights in the Columbia, they, no more than the rights acquired by the assignment of the fund itself, or of the equity of re-

demption in the fund, could avail, whilst policies, whose owners had a claim upon the fund for their satisfaction, remain unpaid. The number of policy-holders may vary ; but the law requires the superintendent of insurance to hold the deposit for them, whether they be few or many, whether their policy claims exceed the deposit or fall short of it.

It is, however, urged by defendant, that if the deposit made by an insurance company under the statute is a special trust, it is nevertheless merely provisional and temporary, that it can be reached only by motion after a return of *nulla bona* upon an execution, and is therefore limited to judgment liabilities ; that, as the law required the dissolution of insolvent companies, and no judgment could after this be rendered, there was no need of more than $100,000 deposit from any company, as this would pay all judgments that might be expected before a decree of dissolution could be reached ; that, after dissolution, the deposit ceased, the securities composing it went into the receiver's hands, and were no longer a separate fund ; and that, therefore, the deed of trust, being made to secure a merely temporary deposit, was *functus officio* when the deposit ceased.

The statute provides (sect. 24) — as it was expedient that it should, from the stringency of its provisions as to not delivering up any part of these securities except in ways specified — for the release of the superintendent and the bank from liability for surrendering such portion of the securities as may be needed to satisfy any judgments upon order of court; but it also provides that the deposit, after such surrender, shall be made good to the original amount by the company within three days. We see nothing in its provisions from which it appears that the securities are intended only for the security of such policy-holders as shall obtain judgment whilst the company was liable, or before the appointment of a receiver.

The argument that, because the assenting policy-holders — five hundred and seventy-six of the Atlas and two hundred

and seventy-three of the Missouri Mutual — ratified the transfer, and virtually became policy-holders of the Columbia, a decree giving all these special assets to the smaller body, which expressed neither assent nor dissent, is unequal and inequitable, does not seem to be valid. Those policy-holders who chose, for any reasons, to relinquish any rights they might have to be satisfied out of special assets of the company in which they were originally insured, and to trust to the promises made by the reinsuring company to their original insurers, had a perfect right to do so ; but their action could in no way change the position of the deposit as to those who never assented to the assignment of the assets. of the original insuring company, or affect the rights of policy-holders who chose to retain their equitable lien upon the special deposit held by the insurance department for their benefit.

So far as the original deposit of the De Soto is concerned, it is true that the Columbia never got that deposit ; but it was paid $20,000 to assume the liability of. the De Soto in fifty-four policies, and to procure the withdrawal of the original deposit and the substitution therefor of the notes of the Columbia of the face value of $100,000 secured by this deed of trust. Since the Columbia withdrew the original deposit according to its contract, we see no reason why, for the purposes of this proceeding, the notes that replaced that deposit should not be treated as would have been the securities that these notes replaced. It surely does not lie in the mouth of the Columbia to say that these notes are not the security required by the statute.

So far as the St. Louis Mutual is concerned, it is contended that, in *Von Phul* v. *Alexander*, the receiver of the Mutual brought suit against the receiver of the Columbia to have the contract for the transfer of assets declared *ultra vires* and void, and to recover all transferred property remaining in kind, including this property ; that judgment in that case was for defendant, and that the question as

to the right of the receiver of the St. Louis Mutual to have this special deposit is, therefore, *res adjudicata*. The question in that case was, whether or not the transfer of all the assets by the St. Louis Mutual to the Columbia was *ultra vires* of the St. Louis Mutual. It was decided that it was not. The question in the present case is, whether the notes that represent the original deposit of the St. Louis Mutual are affected with a trust in favor of such of its policy-holders as have not assented to the assignment or surrendered their policies. We do not see how one question can decide the other. It is admitted that, at the time of the suit of *Von Phul* v. *Alexander*, claims on policies against the St. Louis Mutual by parties who, according to our expressed views, had an equitable right to have this deposit applied exclusively to their claims, had been proved, to an amount exceeding the total value of the original deposit. The receiver of the St. Louis Mutual, as representing its general creditors, had, therefore, no interest in this fund; the equity of redemption was less than nothing, so to speak — it was a minus quantity. The matter in question, as to which the decision of the court in *Von Phul* v. *Alexander* applied, is *res judicata*, and binds parties and privies to that suit; that was, that the transfer of assets in controversy was not *ultra vires*. But as to whether these notes became, by that transfer, properly assets of the Columbia and were to go into its general fund; as to whether there was a lien upon them; as to whether, so far as the Columbia was concerned, they represented any value at all, the court did not decide, for there was no such question in the case. If we hold in this case, that the transfer by the St. Louis Mutual of its assets to the Columbia was not *ultra vires*, but valid, there is no inconsistency in holding so, and holding, nevertheless, that these notes are impressed with a trust to be administered by the receiver of the St. Louis Mutual in favor of the beneficiaries; the

remainder, after satisfying the trust, if any, to go to the receiver of the Columbia.

We think that the judgment of the lower court should be affirmed. It is so ordered. Judge Lewis concurs ; Judge Thompson did not sit.